CORY, *Plaintiff in Error*, v. THE CHICAGO, BURLINGTON AND KANSAS CITY RAILWAY COMPANY.

1. **Railroads:** CONDEMNATION PROCEEDINGS. A railroad may, in order to condemn lands, resort either to the provisions of its own special charter or to those of the general law.

2. ——: ——: DESCRIPTION OF LAND. The description of land sought to be condemned by a railroad company for a right of way is sufficient where the petition mentions the particular subdivision over which the road is to be constructed, gives the general direction in which it is to run, and for a more particular description of its course and location refers to a map filed with it, marked as an exhibit and made a part of the petition.

3. ——— : ——— : ———, Where such map is not attached to the files, the appellate court will assume that it was all that was asserted concerning it in the petition with which it was filed.

4. ——— : ——— : PETITION : PRACTICE. The averment in the petition in a proceeding to condemn land for a right of way for a railroad that the company "cannot agree with the defendants as to the amount of compensation to be paid" conforms to the general law and is sufficient; and the averment need not be sustained by oral testimony.

5. ——— : ——— : DAMAGES FOR WRONGFUL TAKING OF LAND : EVIDENCE. In an action for damages by plaintiff against the successor of a railroad company for the wrongful taking by the latter of his land for a right of way, it is not competent for plaintiff by oral testimony to nullify the record of the proceeding by the company to condemn the land.

6. ——— : ——— : OATH OF COMMISSIONERS. In condemnation proceedings under the general law, it is sufficient for the commissioners appointed to assess damages to make the assessment and return the same under oath. It is not necessary that they take the oath before entering upon the duties of their appointment.

7. ——— : ——— : NOTICE TO LAND-OWNER. In such proceeding it is only necessary to give the owner notice ten days before the petition is heard; it is not required that notice be given him before the assessment of damages by the commissioners.

8. ——— : ———. A railroad company entering upon land, and beginning the construction of its road and making sale before the institution of condemnation proceedings, is the proper party to institute such proceedings to acquire title, and the title, when acquired, will inure to the benefit of its grantee.

9. ——— : ———. Proceedings to condemn may be instituted after the appropriation of the land; but such subsequent proceedings will not cure any antecedent trespass committed by the party seeking to condemn.

10. ——— : ——— : FAILURE TO PAY ASSESSMENT : EJECTMENT : INJUNCTION. For failure to pay the compensation assessed, the owner has a valid ground for an action of ejectment, or for an injunction to restrain the condemning party till compensation is made.

11. ——— : ——— : ——— : ——— : ———. The remedies by ejectment and injunction will not apply where there has been a waiver of prepayment, or a contract releasing payment altogether, or a parol license to enter and build the road under which license, unrevoked, the road had been built

12. ——— : ——— : ——— : ——— : ———. In the cases last enumerated the title of the owner would pass, subject to his right to recover his compensation by any appropriate method of procedure, except as against an innocent purchaser.

13. ——— : ——— : COMPENSATION. Where compensation has become fixed by appropriate statutory proceedings, the measure of damages the owner can claim is the amount awarded him by the commissioners.

14. ——— : ——— : ———. Under General Statutes of 1865, page 352, section 3, the defendant, in a condemnation proceeding, in which his compensation had become fixed, could have procured the issuance of an execution to collect his damages.

15. ——— : ——— : ESTOPPEL. One who makes a valid contract with a railroad company by which he agrees, in consideration of employment by it, to waive all compensation for right of way through his lands, cannot maintain an action against the company for damages for the wrongful taking of the lands.

16. ——— : ——— : ———. The plaintiff in this case *held* to be precluded, after acquiescing for nearly ten years, from relief, especially as against a purchaser at a foreclosure sale.

*Error to Linn Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*A. W. Mullins* with *B. J. Northcott* for plaintiff in error.

(1) The alleged condemnation proceedings did not follow the law with the strictness required by the following authorities: *Ells v. Railroad,* 51 Mo. 200; *Strang v. Railroad,* 16 Wis. 666; *Nelson v. Brodhack,* 44 Mo. 596; R. S. 1879, sec. 892; *Railroad v. Campbell,* 62 Mo. 585; *Cunningham v. Railroad,* 61 Mo. 33. Every requisite of the statute having a semblance of benefit to the owner must be complied with. Mills on Em. Domain, sec. 84, and authorities cited. (2) The condemnation proceeding was not prosecuted in the name of the real party in interest. The St. Joseph and

Cory v. The Chicago, B. & K. C. Ry. Co.

Iowa Railroad Company instituted the condemnation proceeding twenty days after it had sold all its right, privileges, franchises, etc. R. S. 1879, sec. 3462. (3) There is no sufficient description of the real estate sought to be acquired in the petition in the condemnation proceeding. *Railroad v. Taylor*, 43 Mo. 35; Mills on Em. Domain, sec. 115, and authorities cited. (4) The commissioners should have taken the oath, as required by special charter, before entering upon the duties of their appointment, and the owner should have notice before damages were assessed. *Newell v. Wheeler*, 48 N. Y. 486; *Stockett v. Nicholson*, Walk. (Miss.) 75; *Mayor v. Delachaise*, 22 La. Ann. 26; *New Orleans v. Sohr*, 16 La. Ann. 393; Pierce on Railroads, p. 178, and note. (5) No attempt was ever made to agree with plaintiff as to the amount of his damages before beginning the condemnation proceeding. This was a necessary requisite. R. S. 1879, sec. 892. The damages were not tendered or paid before taking possession of the strip on which the railroad was built. *Loup v. Chamberlain*, 20 Wis. 135; *Crittenden v. Wilson*, 5 Cowen, 165; *Ash v. Cummings*, 50 N. H. 591; *Daniels v. Railroad*, 35 Iowa, 129. A judgment that is not paid does not operate as a compensation. *Provolt v. Railroad*, 57 Mo. 256; *Powers v. Armstrong*, 19 Ga. 427; *Thompson v. Railroad*, 3 How. (Miss.) 240; Mills on Em. Domain, secs. 90, 131. There can be no innocent purchaser from him who never had a title, and the title had never been divested out of Cory. Mills on Em. Domain, sec. 144, and authorities cited. (6) The circuit court erred in giving defendant's third declaration of law. Nothing short of a delay of ten years (the statutory limitation against real, not civil, actions) will amount to bar plaintiff's claim for damages or raise a presumption of a waiver. "Such sales (as that to defendant in this case) are ordinarily made by insolvent corporations, and it would be a hardship to raise a

presumption of waiver against an owner short of the limitation for real actions." Mills' Eminent Domain, sec. 144; *Gilman v. Railroad*, 37 Wis. 319; *Chicago v. Wright*, 69 Ill. 318; *Railroad v. Darat*, 61 Ill. 231 (qualifying *Curry v. Mount Sterling*, 15 Ill. 320).

*Karnes & Krauthoff* with *L. T. Hatfield* for defendant in error.

(1) It was competent for Cory to waive the right to compensation given him by the law; and this waiver could be by parol, and when it was acted on by the company became irrevocable. *Baker v. Railroad*, 57 Mo. 265; *Clement v. Durgin*, 5 Me. 9; *Seymour v. Carter*, 2 Met. 520; *Marble v. Whitney*, 28 N. Y. 297; *Cottrill v. Myrick*, 12 Me. 222; *Fuller v. Commissioners*, 15 Pick. 81; *Railroad v. Brownsville*, 45 Tex. 88; *Dietrich v. Murdock*, 42 Mo. 279. (2) Plaintiff having had full knowledge of the appropriation of his land and the expenditure of money in building the railroad over it, and having acquiesced in such action by failing to make timely objection, is now, after the lapse of nearly ten years, estopped from maintaining this suit. *Provolt v. Railroad*, 57 Mo. 256; *Gray v. Railroad*, 81 Mo. 126; *Pryzbylowicz v. Railroad*, 17 Fed. Rep. 492. (3) The alleged defects in the condemnation proceedings are not of that character which make them *coram non judice* and subject to this collateral attack. *Evans v. Haefner*, 29 Mo. 141, 148. (a) The description is sufficient if the land can be identified from what is made to appear. *Kohlhepp v. Roxbury*, 120 Mass. 596. Reference to an attached map or schedule is sufficient. *Matter of Washington*, 58 N. Y. 131. The description in the report of the commissioners is amply precise and complete and fully supplies any previous defect in this respect. *Lower v. Railroad*, 59 Iowa, 563. In this case the railroad had been constructed and there was no

room for doubt or surprise as to identity and quantity of the land. *Railroad v. Kellogg*, 63 Mo. 465. Jurisdiction over the subject-matter was conferred by the filing of the petition and over the person of defendant by service of notice, and want of a precise description could not impair this jurisdiction. *Quayle v. Railroad*, 63 Mo. 465. (*b*) As the St. Joseph and Iowa Railroad Company first took the land and actually constructed the railroad over it, it certainly was the proper party to justify this act by acquiring the title to the strip appropriated by proper proceedings. (*c*) The condemnation proceeding could be had under the general law. G. S. 1865, p. 351, sec. 1; *Cape Girardeau, etc., Co. v. Dennis*, 67 Mo. 438. It has been held that the general or special law could either be followed as the company might elect. *Railroad v. Muder*, 49 Mo. 165; *Provolt v. Railroad*, 69 Mo. 633; *Cunningham v. Railroad*, 61 Mo. 33. (*d*) The petition contained the averment in the language of the statute, that the company "cannot agree with the defendants as to the amount of compensation to be paid." G. S., p. 351, sec. 1. This was sufficient to fix the *jurisdiction* of the court, and such jurisdiction cannot be negatived by a collateral attack based on parol proof that there had been, in point of fact, no such failure to agree. *Railroad v. Rosseau*, 8 Iowa, 373, 377; *Dyckman v. Mayor*, 5 N. Y. 434, 440; *Railroad v. Muder*, 49 Mo. 165; *United States v. Reed*, 56 Mo. 565, 572; *Railroad v. Carter*, 85 Mo. 448, 451. (*e*) The constitution then in force did not in terms require the damages assessed to be paid before the land was appropriated. Const. 1865, art. 1, sec. 16. (*f*) The plaintiff is not in a position to complain of delay in others. And, as is shown by his own testimony, he waived any payment of the damages assessed to him, and accepted employment in lieu thereof. It was, therefore, entirely unnecessary to pay the money into court for him.

SHERWOOD, J.—This cause has been transferred to this court from the Kansas City court of appeals, on the ground that the title to real estate is involved. It is an action for one thousand dollars' damages for taking plaintiff's land in the construction of a railroad wrongfully and without legal authority.

Briefly told, the essential facts are substantially these: In the month of July, 1872, the St. Joseph and Iowa Railroad Company resolved to build a branch road, and on the thirteenth of that month proceeded to condemn the right of way through the grounds of various persons, and, among others, those of plaintiff; and the result of such proceedings was that the plaintiff was duly notified thereof and the commissioners made report of their action, which was duly recorded August 5, 1872. The report of the commissioners awarded to plaintiff the sum of one dollar; but he made no objection and saved no exceptions to the report.

The defendant, in its answer, set up title to the land in controversy under, and by virtue of, a purchase thereof, in 1880, from the trustee, who bought under a decree of foreclosure of the premises in 1876, and also claimed to be the purchaser without notice, and after due examination of the records aforesaid, and upon the ground of the plaintiff's acquiescence in the report aforesaid, and by reason of his residing continuously near the railroad ever since the work complained of was done, and without making any claim for damages or any complaint about the same to the receiver appointed by the federal court, who had the road in charge upwards of six years. The present action was not begun until May, 1882, almost, if not quite, ten years from the time the railroad company first entered on plaintiff's land and began its work.

The substantial portion of plaintiff's own testimony was as follows: "I bought the land in 1869; I could have sold it in 1872 for thirty dollars per acre. I was

willing to give the right of way to the railroad company if they would go along the public highway on the east side of my farm. I don't recollect of any service of notice of the appointment of commissioners to assess damages by the building of this road through my farm. I consulted an attorney, about the time of the construction of the road, about my claim for damages; but I accepted a position as section foreman on the line, with the understanding that I was to have a permanent position, and drop the question of damages, but there was no contract to that effect. I held the position only about three or four months and never received any pay for my work. The road was sold on my judgment for wages, and I bought the part running through my farm, and also a handcar, and run the road myself while there were no trains, and until the Qualeys commenced operating it. I was waiting for the road to get out of the hands of the receiver. I have worked some for the road since it has belonged to the defendant. I have recently built a new barn on my farm. I think the strip of ground taken by the railroad company for right of way contained about seven acres. In waiting for the road to get out of the hands of the receiver, I acted under the advice of Major Mullins. Mullins did not say I could not recover from the receiver; he was only my counsel generally. The railroad passes along about one hundred feet from the house. Dirt has been piled up on each side of the track, and I had to put in one week's work with my boy and team to keep the graders from piling the dirt in front of the house, and get it so I could cross the railroad. Most of the dirt was hauled away."

The claim is made that the proceeding instituted for the condemnation of a portion of plaintiff's ground was a nullity; the chief reason for so regarding it being that it failed to conform to the special charter, under which authority was granted. Under the general law relating to the incorporation of railroads, as it existed

in 1855, a company, whether formed under the general law, or under any "special act," when desirous of condemning land, in consequence of being unable to agree with the owner, had a right to proceed under that general law. 1 R. S. 1855, pp. 414, 415, 416 and 417, secs. 13 and 14. When the next revision of the statutes occurred, these sections were, in substance, incorporated into sections 1, 2 and 3 of the General Statutes, 1865, pp. 351, 352, which make provision for the appropriation of lands "by any road, railroad or telegraph corporation created under the laws of this state."

Taking the history of this litigation, there can be no doubt that a railroad, or other corporation enumerated above, may, in order to condemn lands, resort either to the provisions of its special charter or to those of the general law. This point was so ruled as to a macadamized road company, though possessing a special charter. *Cape Girardeau, etc. v. Dennis*, 67 Mo. 438.

The question then occurs: Did the condemning company conform to the provisions of the general law? It is insisted that the petition does not contain a "description of the real estate which the company seeks to acquire," but the petition mentions the particular eighty of the defendant's land over which the proposed road was to be constructed, gives the general direction in which it was to run, and then, for a more particular description of the location and course of the road, it refers to a map filed therewith and marked "Exhibit A" and made a part of the petition. This was a sufficient description under the authority of *Railroad v. Story*, 96 Mo. 611; and, inasmuch as the map is not attached to the files, we will not assume that it was not all that was asserted concerning it in the petition with which it was filed, and this must be regarded as especially true, since the lower court in its trial of this cause will be presumed to have examined said map and found it sufficient.

The petition also contained the averment that the company "cannot agree with defendants as to the amount of compensation to be paid." This averment conformed to the general law and was sufficient; and it was not necessary for the defendant to sustain this averment of the petition by oral testimony; nor was it competent for the plaintiff to nullify the effect of the record, by denying the truth of such assertion, even if his language can be construed into such a denial. Nor was there any failure to comply with the general law by the commissioners. True, the special charter required that the oath they were to take was to be taken "before entering upon the duties of their appointment;" but under the general law the prior taking of such oath was not requisite; on the contrary, the language of the general law in touching upon the duties of such commissioners in this respect declares: " Who, after having viewed the land, shall forthwith return, under oath, such assessment of damages to the clerk of such court."

The report of the commissioners was made on the thirty-first day of July, 1872, and immediately below the same is the necessary affidavit made by them. So that under the general law their duty was fully discharged, since their report in other respects is full and complete. And the same line of remark applies to the notice served upon the owner of the property; it was in the form of a summons, and was served as the law aforesaid required, ten days before the petition was heard, and under that law it was not requisite that notice should be given to the owner before making the assessment of damages.

Nor is there any merit in the point that the condemning company instituted its proceedings to appropriate the land in question *twenty days* after it had sold and conveyed its rights and entered, etc. Section 3462, Revised Statutes, 1879, requiring actions to be

brought in the name of the real party in interest, does not touch a case of this kind or affect the jurisdiction of the court. It appears too that the St. Joseph and Iowa Railroad Company began the construction of the road prior to such sale, and, if so, it was the proper party to institute the necessary proceedings to acquire the title, as such title would, of course, inure to the benefit of its grantee. And there is no doubt about the validity of proceedings to condemn instituted after an appropriation of the land taken. *Secombe v. Railroad*, 23 Wall. 108. Of course, such subsequent condemnation proceedings could not heal or cure any antecedent trespass committed by the company. *Ib.*

But, it is urged that the one dollar, assessed as damages, not having been deposited with the clerk, until some six years after the consummation of the proceedings to condemn, there was no compensation and hence no title passed by reason of the proceedings. While, under our rulings, this failure to pay the assessed compensation might have been a valid ground for an action of ejectment, or for an injunction to restrain the company till compensation made, this rule would not apply where there had been a waiver of prepayment, or a contract releasing payment altogether, or a parol license to enter and build the road, under which license, unrevoked, the road had been built. In such case the title of the owner would pass; but unless to an innocent purchaser, of course, subject to his right to recover his compensation by any appropriate method of procedure. But when, as here, such compensation has become fixed by appropriate statutory proceedings, the measure of the damages or compensation the owner can claim is the amount of the compensation awarded him by the commissioners. *Railroad v. Johnson*, 59 Pa. St. 290; Pierce on Railroads, 170; *Smart v. Railroad*, 20 N. H. 233. Under the general law, as it then existed, the present plaintiff could have procured the issuance

of an execution to collect his damages. Gen. Stat., 1865, p. 352, sec. 3.

But, taking the plaintiff's own testimony as a basis for the inference, there can be but little doubt that he made a valid contract with the company, though by parol, to accept the position as section foreman, and to "drop the question of damages." It is true, he retained the position only a few months; but this may have been his own fault, as there is no testimony on this point, and it will not be assumed that the company was in fault; but, granting so much as that, *this is not a suit on that contract.* That contract and that release if valid, saying nothing about the condemnation proceedings, is certainly a bar to the present action. Pierce on Railroads, 168, and cases cited.

In conclusion, taking this whole record into consideration, there are such circumstances of statutory proceedings had; of acquiescence in the taking of plaintiff's land; of a release of all damages by him, upon a valid consideration; of a failure on his part to take any steps to assert or even to claim his alleged rights during a period of nearly ten years, as ought to preclude him from relief now, especially as against a purchaser at a foreclosure sale; and so we affirm the judgment. RAY, C. J., BLACK and BRACE, JJ., concur.