JAMES H. CULVER, Appellant, v. J. M. KURN and FRANK A. THOMPSON, Trustees of the ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.—No. 39505.—193 S. W. (2d) 602.

Division One, March 11, 1946.

Rehearing Denied, April 8, 1946.

*H. A. Gardner* for appellant.

*M. G. Roberts, Frank C. Mann* and *Mann & Mann* for respondents.

1160

CLARK, J.—Plaintiff's petition alleges personal injuries received by him while employed by defendants and due to their negligence in the operation of a railroad as a common carrier in interstate commerce. Verdict and judgment were for defendants and plaintiff has appealed.

Appellant assigns as error the trial court's action: (1) in holding a release, executed by appellant after the injury, valid unless procured by fraud and in admitting same in evidence over appellant's objection; (2) in giving instructions numbered 8 and 12 at the request of defendants.

In their answer respondents set up the release as a bar to the suit. In his reply appellant alleged that the release is without a valid consideration, was procured by false and fraudulent representations, and is void under Section 55, Title 45, U. S. C. A.

Appellant, with his foreman, Howe, and other workmen was riding on a railroad motor car on defendants' track when a train was observed approaching from the opposite direction. In response to an order from some one (appellant says it was the foreman) the men jumped from the motor car. One workman was killed and appellant received an injury to his knee and claims to have received a blow on the ▮▮ side of his head from a flying object resulting in an injury

to one of his ears. Shortly after the collision defendants' claim agent, Blume, appeared and, after the coroner had held an inquest as to the dead workman, took appellant and two other workmen in his automobile to Steelville in search of a doctor. No doctor being found there they went on to Lebanon and consulted Dr. McFarland. The latter was not on the medical staff of defendants, but on this occasion was employed and paid by the claim agent. The doctor examined and bandaged appellant's knee and appellant says he also examined his ear and told him there was nothing the matter with it and would give him no trouble in the future. The doctor denies that he made any such statement and says that appellant made no complaint about his ear; that there was no external evidence of an injury to it and he did not examine it. After the doctor had been consulted the claim agent requested the men to sign releases and one of them did so. Appellant did not sign that evening. He says the claim agent came to see him the next morning before time for him to go to work and told him he had talked with the doctor and "he says there is nothing wrong with you." Then appellant says: "I thought it over and I couldn't be without work and the doctor had told him there was nothing that would occur later, so I pretty nearly had to go to work." Appellant said he knew it was a rule of the company after he had been "involved in an accident of that kind" he couldn't go back to work until he had signed some sort of a release. He also said the claim agent told him "if anything happened to us later, he would pledge his word and honor them releases wouldn't harm us in no way."

Appellant introduced medical testimony that at the time of trial he was totally deaf in one ear and this was due to an injury.

For respondents, Blume denied that he made the statements attributed to him by appellant; denied that he was present when appellant signed the release the morning after the collision; said it was his duty to investigate accidents, take statements and settle claims, but not to take releases on form G-43; that it was the foreman's duty to take G-43 releases, and he had another form, G-39.

Howe, respondents' foreman, said he took the release from appellant the next morning after the collision and Blume was not present; that he kept a supply of release forms; that the company had a rule that where men had been involved in an accident they couldn't go back to work "until a release was signed or some adjustment made." He said he told the men "they had to sign a release or lay off until some kind of a settlement was made." Four days after the collision, and because of it, this witness was discharged, but was re-employed about six weeks later.

The release signed by appellant is on a printed form, G-43, with blank space in which was inserted the date and place of injury. Among other recitals it states: that appellant was injured and claims

that respondents are liable and they deny liability; that respondents will not retain in their employment any person who has an unadjusted claim; that appellant desires to be re-employed and in consideration of the promise of employment for one day, and as much longer as satisfactory to respondents, the release being conclusive evidence of such promise, he does compromise his claim and release respondents from all liability, etc.

We are not impressed with appellant's claim that he was induced to sign the release because of a false representation. He did not seek to have the jury consider any statement purported to have been made by the claim agent. The statement of Dr. McFarland, if made, that appellant's ear would give him no trouble in the future, was a mere opinion and we find no evidence that it was dishonestly or fraudulently made.

According to decisions of the appellate courts of this State a contract of employment without term may be terminated at the will of either party without cause. [Brookfield v. Drury College, 139 Mo. App. 339, 123 S. W. 86; Davis v. Pioneer Co., 181 Mo. App. 353, 172 S. W. 67.] Also, a promise of employment, even for only one day, is a good consideration for a release. [Cory v. Chicago, etc., Ry., 100 Mo. 282, 13 S. W. 346; Bethurkas v. Chicago, etc., Ry. (Mo. App.), 249 S. W. 438; Forbs v. St. Louis, etc., Ry., 107 Mo. App. 661, 82 S. W. 562; Hogard v. Kansas City Ry. (Mo. App.), 202 S. W. 431.] We think that appellant's own evidence shows that he was promised such employment.

However, conceding that the release would be otherwise valid, it remains for us to determine whether it is valid under the terms of the Federal statute, for unless the statute prevents common carriers from doing something which they could legally do before its enactment it has no necessary purpose.

Section 55 of Title 45, U. S. C. A., provides: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void; . . ." The statute applies to arrangements entered into after, as well as before, the injury. [Duncan v. Thompson, 315 U. S. 1, 86 L. Ed. 575; Railroad v. Schubert, 224 U. S. 603, 56 L. Ed. 911.] It does not prevent the compromise of disputed claims made fairly and in good faith. The question narrows to whether the arrangement in the instant case was such a compromise, or whether respondents' rule, the nature of the release and the manner in which it was procured constitute a "contract, rule . . . or device" prohibited by the statute.

Although respondents' rule was not introduced in evidence, the existence of such rule was disclosed and admitted by appellant to the effect that an employee "involved in an accident" could not

go back to work until he signed some sort of release or made a settlement.

Respondents in their brief say that under this rule appellant's "employment was automatically terminated when he was involved in an accident." If so, then the employment of all the other persons "involved" was also automatically and immediately terminated. "Involve" imports the idea of "implicate," "include," "affect." The employees in charge of the train, and all those riding on the motor car, including the foreman, Howe, were "involved in the accident," regardless of whether or not their conduct contributed to cause the collision. Apparently respondents did not regard the employment of Howe as being *immediately* terminated for, if so, he had no authority to negotiate a release with appellant the morning after the collision. In fact, Howe's employment was not actually terminated until four days after the collision. It seems that the rule, as construed by the actions of respondents, did not in and of itself discharge any one, but only furnished a reason to later terminate the employment of those in fault and to terminate the employment or require a release from those who might claim damages, after such facts should be ascertained.

The release purports to be a compromise of a disputed claim, but read as a whole it does not indicate a compromise and it seems that the foreman, Howe, did not so regard it. He testified to the effect that appellant must "either sign a release *or make some kind of a settlement;*" again "I told them they had to sign a release *or lay off until some kind of settlement was made.*" The release is on a printed form, G-43, with only the date and place of accident to be filled in. This form of release is carried by the foreman on the job and every injured employee who signs, regardless of the extent of his injuries or possible future development, does so for the same consideration, to wit, one more day's work at the same rate of pay he is already receiving. Except for the Federal statute, the release may rest upon a valid consideration, but actually appellant received no compensation for his injuries. For every day's pay he received thereafter he presumably gave full value by his labor. According to his testimony his real reason for signing was the necessity for retaining the employment denied him for no fault of his own.

We do not hold that the statute prevented respondents from terminating appellant's employment, nor that it required them to settle his claim. They had the option to deny liability or to compromise.

The facts here are unlike those considered in Patton v. A. T. & S. F. Ry., 59 Okla. 155, 158 P. 576. There a compromise in consideration of the payment of a small sum of money was upheld. Here, while the release purports to be a compromise, the wording of the instrument and surrounding circumstances show it was not intended

to adjust and settle a claimed liability of respondents to appellant, but to preclude appellant from claiming and suing for such liability and to exempt respondents from the possible consequences thereof by permitting appellant to retain his employment. We hold the evidence shows a ''contract, rule, regulation, or device'' prohibited by the statute, and think that we are sustained in this conclusion by the reasoning in Duncan v. Thompson, supra, although the facts are different.

Instruction 8 given at respondents' request told the jury in effect that the release, if not procured by fraud, was a bar to appellant's suit. This was reversible error for which the judgment is hereby reversed and the cause remanded. All concur.