**John W. MORSINKHOFF, Plaintiff-Respondent,**

v.

**DE LUXE LAUNDRY & DRY CLEANING COMPANY, and Samuel Paul, Defendants-Appellants.**

No. 23207.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1961.

Jack N. Fingersh, Jacob Brown, Kansas City, Brown & Koralchik, Kansas City, of counsel for appellants.

James S. Formby, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiff had a verdict and judgment for $1,280.12. His claim arises from the breach of an alleged contract for personal employment, which he asserts is actionable under the doctrine of promissory estoppel. Defendants contend that plaintiff's evidence failed to make a submissible case and that their motions for directed verdict submitted at the close of all the evidence (and for similar after-trial motions) should have been sustained. The refusal of the trial court to do so is the sole basis of this appeal.

It is true, as plaintiff asserts, that on appeal of a jury tried case the Court does not weigh the evidence. Siegel v. Ellis, Mo., 288 S.W.2d 932. In determining whether the trial court erred in overruling defendants' motion for directed verdict it is the duty of the appellate court to con-

sider only the evidence most favorable to plaintiff, together with the reasonable inferences to be drawn therefrom, and to disregard the evidence of defendant unless it aids plaintiff's case. Eddy v. Missouri Public Service Co., Mo.App., 309 S.W.2d 4, 9; Sibert v. Boger, Mo., 260 S.W.2d 569. And since defendants on appeal contend that this judgment should be reversed outright, we must determine if plaintiff's evidence makes a submissible case, either on the theory submitted at the trial, or on any theory.

The pleadings established that defendant DeLuxe Laundry and Dry Cleaning Company is a Missouri Corporation, and defendant Samuel Paul is an "officer, employee and agent of that corporation". On April 29, 1955, the plaintiff, John Morsinkhoff, was employed as plant engineer and supervisor by Crawford Manufacturing Company in Kansas City, Kansas, at a salary of $7,200 per year, plus an annual bonus. He had been so employed for approximately five years. About the first of January, 1955, he had a discussion with Mrs. Vera Carter, operator of an employment agency. He was seeking an improved employment situation. Early in April he filed with her a written résumé of his qualifications and experience. On the evening of April 29, 1955, and pursuant to a tentative appointment arranged by Mrs. Carter, the plaintiff had a meeting with defendant Samuel Paul and his father, in the offices of defendant corporation. It is conceded that these parties never executed any written contract of employment and that there exists no letter or written memorandum of any kind relating to any employment agreement. Since, therefore, plaintiff's case factually rests entirely upon what transpired at this meeting, we shall recount in some detail the events and conversation which there took place as told by the plaintiff himself. He said that Mr. Paul and his father "outlined to me the business of the DeLuxe Laundry"; told him they planned to expand; spoke of the amount of work; and the father expressed the belief that young Mr. Paul needed someone to help him supervise and manage the business. The father took plaintiff on a tour of the plant. Plaintiff gave them an outline of his working experience, not only with Crawford, but with the Piedmont Shirt Company in North Carolina. Plaintiff stated that the elder Paul said to Samuel Paul: "This is the man we need for the job". Describing the interview further, plaintiff said he brought up the question of salary. He told them his earning at Crawford approximated $10,000 per year; that some discussion followed and Samuel Paul remarked: "Well, on the basis of $200 a week salary, that will give you the $10,000 per year".

These specific questions were put to plaintiff and he made the following answers:

"Q. * * * My question was what, if anything, was said regarding the term of the employment, not the time to begin, but the term of the employment, what period was it to cover? A. Oh, a year.

"Q. And in discussing salary was that discussed— A. In terms of a year.

"Q. —in terms of a year? A. $10,000 a year.

"Q. Now, during this discussion what, if anything, was said concerning when you might come to work? A. I told them, Mr. Paul and his father, that at the present time I was employed, but before I could go to work for them, because of a verbal obligation that I had with Crawford Manufacturing Company when I accepted the job that I presently had with them, that when and if I ever decided to resign that I would give them a month's notice, * * * and such being the case, that I, therefore, couldn't possibly come to work before the first of June, and rather than that, since I hadn't had any vacation for a year,

that I would like to take the first week in June as a vacation period and start to work June 6, 1955. * * *.

"Q. What, if anything, did Mr. Paul say to you concerning hiring you or employing you on June 6, 1955? * * * A. I still don't understand your question, if I may say so.

"Q. You advised Mr. Paul that you would like to come to work June 6, 1955? A. Correct.

"Q. What was his reply to that? A. There was no objection made at that time. * * *.

"Q. Just in your own language relate the conversation which was had between you and Mr. Paul concerning whether you would be employed and, if so, when? A. When the salary was agreed to, I told Mr. Paul that I would come to work for them as of June 6, at which time, as I said, the exact words that he used I don't know, but we shook hands and I said, 'I'll see you June 6'".

On cross-examination these additional questions were propounded with the following responses:

"Q. There was nothing in those conversations, Mr. Morsinkhoff, that dealt with the period of employment, was there? * * * A. I have to say that in the agreement of the terms of pay that it was on the basis of a year employment.

"Q. Do I understand that you infer from the conversations about the pay that the employment would be for a year? A. Yes, sir. * * *

"Q. Was there any conversation that if they wanted to terminate your employment, if it began, that they could terminate it at any time they wanted? A. I presume so, yes, sir. I have never been terminated from one yet though.

"Q. I mean was there anything in the conversations that in any way in-

dicated that they could not terminate the employment any time they wanted? A. No, sir. No, sir".

Mr. Morsinkhoff said that about two days later on May 1st, he talked with Crawford about leaving that employment; that he gave them a month's notice of his intention to terminate, did terminate and his last day of work there was on May 27th. He stated that on May 3, he called Mr. Paul by telephone "to ascertain that everything, the starting date of my work was satisfactory and to also reaffirm him that I had made arrangements that I would be able to start at that date". Plaintiff did not say what response was made by Mr. Paul except that no objections were made. However, on May 10, Mrs. Carter, operator of the employment agency, advised him that Mr. Paul had called her and told her "the whole deal was off". Plaintiff says he called on Mr. Paul the following evening (May 11th); that Mr. Paul said he had changed his mind and expressed doubt that Morsinkhoff had left Crawford's employ.

The case as submitted authorized a finding for plaintiff if the jury found that on April 29, 1955, defendants promised plaintiff that if he discontinued his employment with Crawford, defendants would employ him; that the promise was of such a nature as would reasonably induce plaintiff to resign from Crawford; that plaintiff did so resign and offered to begin employment with defendants but defendants refused to employ him, and as a result, plaintiff was damaged, then plaintiff could recover any loss of earnings while temporarily unemployed, any bonus lost under his previous employment, plus any reasonable expense incurred in securing a new job.

It was plaintiff's testimony that he was out of work until July 5, 1955, when he secured employment with the H. D. Lee Company at a salary of $6,500 per year. Apparently the damages making up the verdict included one month's pay and part of a year's bonus lost from Crawford, plus an employment agency fee which plaintiff paid for securing the H. D. Lee connection.

We think that viewing the evidence most favorably for plaintiff and giving him all reasonable inferences, justifies a conclusion that defendants on April 29, 1955, orally agreed to employ plaintiff for (a) one year, commencing June 6, 1955, at a salary of $10,000 per year, or (b) for an indeterminate period, beginning June 6, 1955. However, plaintiff does not base his suit upon a one year contract but rather upon an oral hiring to commence June 6th and continue for an indefinite period. It was this latter theory that was submitted to the jury.

If the employment was for one year and to commence 37 days after the oral contract was made, no action would lie thereon by reason of the Missouri Statute of Frauds, Section 432.010, V.A.M.S. "No action shall be brought * * * upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, * * *". Hoover v. Citizens Home Bank, Mo.App., 245 S.W.2d 154, 155. "Our statute of frauds * * * has been considered a rule of evidence affecting the remedy". Campbell v. Sheraton Corp. of America, 363 Mo. 688, 253 S.W.2d 106, 109.

If the contract was oral and for an indefinite period, then it was terminable at will and may (absent some statutory requirement—nonexistent here) be ended by either party at any time, for any reason whatever, without incurring liability. The authorities so hold.

"In the absence of a statute to the contrary, an employment for an indefinite term may be terminated at the will of either party, regardless of the length of service, for or without cause, and without giving any reason or explanation therefor, as considered infra § 44, unless such termination is limited by contract". 56 C.J.S. Master and Servant § 31, pp. 412–413.

In Culver v. Kurn et al., 354 Mo. 1158, 193 S.W.2d 602, 603, 166 A.L.R. 644, the court said: "According to decisions of the appellate courts of this State a contract of employment without term may be terminated at the will of either party without cause".

"As a general rule, unless the contract of employment is for some definite time, the servant has no right of action, on being discharged, for breach of contract if he has been paid his salary for the time actually employed". 56 C.J.S. Master and Servant § 48, pp. 441–442.

In Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 124, the Supreme Court said: "The rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such case, no action can be maintained for wrongful discharge. (Citing cases.)"

And Bell v. Faulkner et al., Mo.App., 75 S.W.2d 612, holds that where a laborer worked for a corporation for several years at a certain rate per day, but was never employed for a definite time, he could be discharged at any time, with or without reason, without liability on part of the corporation or manager. See, also, Waller v. Tootle-Campbell Dry Goods Co., Mo.App., 59 S.W.2d 751, and Forsyth v. Board of Trustees of Park College, 240 Mo.App. 622, 212 S.W.2d 82.

■■ It follows and the conclusions are clear that in Missouri (1) no action shall be brought upon any agreement not to be performed within one year from the making thereof, unless the agreement or some memorandum or note thereof shall be in writing and signed by the party to be charged; (2) an employer may discharge any employee at any time, without cause or reason, or for any reason, and in such case, no action can be maintained for

wrongful discharge where the employment was a hiring for an indeterminate period.

■ If an employee, under an oral contract of employment for an indefinite period, is without remedy when fired without reason, one day or one week after commencing work, is it logical to hold he is entitled to damages if the employer refuses to allow him to commence work at all under the agreement? We think not. In the Campbell v. Sheraton Corporation case, supra, there was a letter confirming employment as hotel manager at a salary of $12,000 per year and promising severance pay of one month's salary if plaintiff's services proved unsatisfactory. Plaintiff was never permitted to begin work. In reversing a trial court judgment for plaintiff it was held the Statute of Frauds applied if the employment was for a year, and if it was a hiring for an indeterminate period the rule as stated in Brookfield v. Drury College, 139 Mo.App. 339, 123 S.W. 86, 94, as follows, applied: "The law in this state has been well stated that an indefinite hiring at so much per day, or per month, or per year, is a hiring at will, and may be terminated by either party at any time, and no action can be sustained in such case for a wrongful discharge".

In our case plaintiff has endeavored to outflank these decisions by invoking what he terms the doctrine of promissory estoppel. He says defendants' representation of a future intention (to employ plaintiff) absolute in form, deliberately made to influence the conduct of another (to give up his existing employment) and acted upon by the other, is generally the source of a right and may amount to a contract, enforceable as such by equity. As authority for this position plaintiff relies primarily at least upon two cases, viz.: Feinberg v. Pfeiffer Co., Mo.App., 322 S.W.2d 163 and Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88.

In the Missouri case plaintiff had been an employee of defendant corporation for thirty-seven years. During the year 1947,

her salary and bonus amounted to approximately $6,000. At its 1947 annual meeting the board of directors passed a resolution or order authorizing plaintiff to retire at any time she wished to do so, and provided that if she did retire, defendant corporation would pay her $200 per month retirement pay for life. Plaintiff continued working for a few months and then retired. Defendant paid the retirement for several months and then refused to continue. The court held that the giving up of her "lucrative job" by plaintiff amounted to consideration for the promise of retirement pay, that her act of retirement was in reliance upon the promise contained in the resolution and therefore an enforceable contract was created under the doctrine of promissory estoppel. We think this case is quite different from the one before us.

In the California case defendants owned and operated numerous real estate properties in the city and county of San Francisco. On May 1, 1902, plaintiff was employed as captain of detectives in the San Francisco police department with a salary of $250 per month. On this date, defendant's agent orally agreed to employ plaintiff as overseer of their lands and buildings for a term of ten years at a salary of $300 per month. Plaintiff was promised a written contract but before it was executed one of the heirs and promisors went to Europe and was there killed. The written contract of employment for ten years was never executed although plaintiff resigned his position with the police department, entered upon the duties of the promised job and continued for almost two years. In 1904, defendants disposed of many of their real estate holdings and terminated plaintiff's employment. Plaintiff had judgment of $11,100 damages, which the Supreme Court set aside, remanding the case for retrial on the issue as to whether or not defendants were equitably estopped to assert the Statute of Frauds as a defense. On page 97 of 106 P., the opinion states: "The action * * * is for damages for

the violation of the terms of the agreement by which he was employed for certain compensation to perform services for the defendants for a stipulated term of years. The measure of damages is, therefore, prima facie, the contract price". On page 95, the court said: "The authorities all recognize the proposition that the acts, conduct, or statements relied on as constituting ground for the estoppel must generally be acts, conduct, or statements amounting to a representation of fact, as distinguished from mere expression of opinion or intention, or mere promise of something to be done in the future. * * *. This, undoubtedly, is ordinarily true, even where a party, relying simply on the honor, word or promise of the other, has changed his position to his injury because thereof". The court then expressed the opinion that: "While the question is by no means free from doubt" the peculiar facts here could be held to be "such a manifest fraud as would justify the application of the doctrine of equitable estoppel". The court then discussed the question of damages and said it should be based upon breach of the ten year contract.

At most this opinion holds that where the facts may be ruled to constitute fraud, equitable estoppel may be applied. We don't know what the ultimate result was as this case did not again appear in the reports. Clearly, however, the court indicated that a mere promise to give future employment is, standing alone, insufficient to cause application of the doctrine.

While this California case is persuasive—giving recognition under those facts to the general doctrine of equitable estoppel, which is at least blood brother to our plaintiff's doctrine of promissory estoppel,—it is not controlling in Missouri, nor do we believe it rules the facts in our case.

The same theory was presented to and decided by the U. S. District Court, New York, in Kahn v. Cecelia Co., 40 F.Supp. 878, 879. There the plaintiff was orally employed for three years at a salary of $1,000 per week. He worked for a time and was then discharged. Defendant had promised to enter into a written contract embodying the terms orally agreed upon. The sole ground urged by plaintiff was that defendant was estopped to interpose the Statute of Frauds. The court held that the doctrine of "promissory estoppel" had no application to this case under the New York law, although it had received a limited application there "as the equivalent of consideration" in cases involving charitable subscriptions. The court granted defendant's motion to dismiss on the ground of failure to state a claim, being unwilling to permit the "practical nullification of the Statute of Frauds".

If plaintiff has a cause of action under the facts here, it must be rooted in defendant's breach of contract. It is plaintiff's position that defendant's promise of employment, which plaintiff relied upon and acted upon to his detriment, reanimated an unenforceable agreement, because such promise created an estoppel to deny the contract. He testified the contract was for one year. Action on such a contract is precluded because of the Statute of Frauds. To allow recovery on the theory of promissory estoppel would abrogate the purpose and intent of the legislature in enacting the Statute of Frauds and would nullify its fundamental requirements. To allow recovery of damages for breach of an oral contract of employment for an indeterminate period, either before or after entry thereupon, would be to overrule a long line of decisions which hold exactly the opposite. In such a situation there is no mutuality of obligation. The employee may quit any time or never start performance and suffer no liability. If the employer is held liable, the amount and extent of damages poses a difficult question. If the employee is fired one week after he starts work, clearly under the Missouri law, he can recover nothing. If the contract is breached before performance begins, what shall be the extent of recovery? Shall it be limited to one month's loss of

pay, plus loss of bonus and employment agency fee as was allowed here, or if the employee were out of work for one year or two years, may he recover damages covering wages lost for this whole period? The damages resulting from loss of a promised employment which may be terminated one hour, one day or one week after it is begun, are, we think, so inconsequential as to be impossible of either admeasurement or allowance. The Missouri cases have not allowed recovery in such instances. This is in accord with the general rule. We believe that defendants' motions for directed verdict should have been sustained.

The judgment is reversed and the cause remanded with directions to enter judgment for defendants.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court. All concur.