**Deloyd WARE, Plaintiff-Appellant,**

v.

**ST. LOUIS CAR COMPANY, a Division of General Steel Industries, Inc., a Corporation, Defendant-Respondent.**

No. 31751.

St. Louis Court of Appeals.

Missouri.

Nov. 17, 1964.

Wilson Gray, St. Louis, for plaintiff-appellant.

Frank C. Mansfield, St. Louis, for defendant-respondent.

DOERNER, Commissioner.

Plaintiff claims to have been wrongfully discharged from his employment with defendant, and brought this action to recover damages. After the defendant had filed its answer and the defendant had responded thereto by his reply, the court sustained defendant's motion for summary judgment, from which plaintiff brings this appeal.

The undisputed facts disclosed by the pleadings and the defendant's motion for summary judgment, including two affidavits filed in support thereof, show that plaintiff was employed by defendant, a St. Louis manufacturing concern, from 1952 to October, 1962. On October 20, 1962, plaintiff was suspended from his job for "allegedly threatening a fellow employee with an open knife and using abusive language * * *" as plaintiff expressed it, or for assaulting a fellow employee " * * * with a deadly weapon, a violation of the laws of the City of St. Louis and State of Missouri," as defendant described it. Plaintiff was a member of Local Union No. 1055 of the United States Steel Workers of America, AFL–CIO, the collective bargaining representative of the unit to which plaintiff belonged. Prior to plaintiff's discharge the Union and the defendant had entered into a collective bargaining agreement which included, among other matters, certain provisions regarding the processing of discharge cases and the adjustment of grievances. Article X of the Agreement provided, in brief, that in exercising its prerogatives of management the Company would not summarily discharge an employee, but would first suspend him; that the employee, if he believed he had been unjustly dealt with, would be furnished with a written statement of the offense or misconduct for which he was suspended, and, upon written request, was entitled to a hearing before a representative of the Company or the Company Executive Shop Committee.

At his request plaintiff was furnished with a written statement setting forth his offense, and was afforded a hearing, held on October 23, 1962 before the Company Executive Shop Committee, at which he testified and was offered the right to be represented and to adduce evidence in his favor. As authorized by Article X of the labor contract, the Company Executive Shop Committee decided that plaintiff's suspension should be converted into a discharge. Written notice of the Committee's decision (the date of which does not appear in the record) was sent to Local Union No. 1055, but not directly to the plaintiff.

Plaintiff alleged in his petition that he did not learn of the notice of his discharge until he was given a copy by the Union on October 31, 1962. Plaintiff further pleaded in his petition that " * * * because of said wrongful action on the defendant's part in mailing the notice of discharge to the Local Union and not to the plaintiff, the plaintiff was thereby prevented from appealing his discharge within twenty-four hours as provided in Article X of the Agreement (actually, 48 hours) but did make the appeal within twenty-four hours after his knowledge of the defendant's decision." Plaintiff also alleged in his petition that his discharge was in violation of Rule No. 16 of the defendant's rules and regulations as set forth in a booklet titled "On The Job With St. Louis Car Company" which rule stated:

> " 'Threatening, intimidating, coercing or interfering with fellow employees on the premises. First Offense, Warning. Second Offense, Three days off. Third Offense, Discharge.' "

The gravamen of plaintiff's action, as contained in the concluding paragraph of his petition, is as follows:

> "7. That the discharge of plaintiff by the defendant without allowing him a chance to appeal his dismissal and in refusing to hear his appeal when made and discharging him contrary to the

above Rule 16 was wrongful and unjust and as a result thereof, his reputation and character have been irreparably damaged. That he has been deprived of working at his usual occupation or any employment commensurate with his experience and ability; that he has suffered loss of seniority rights and other fringe benefits that he has suffered undue hardships, humiliation and loss of income and has caused his health to become impaired through nervousness and mental anguish all to his damage to the sum of $5,000.00."

In its answer defendant admitted the existence of the collective bargaining agreement, plaintiff's suspension, his request for a hearing, the holding of the same, and the decision to discharge plaintiff. Affirmatively, it alleged that Local Union No. 1055 represented plaintiff at the hearing before the Company Executive Shop Committee; that plaintiff never advised defendant that the Union did not represent plaintiff; and that in sending the notice of discharge to the Union it followed strictly the grievance procedure prescribed in Article V, Paragraph 4 of the collective bargaining agreement, relating to the procedure for the adjustment of grievances; that " * * * the Union did not notify it that its reply was not satisfactory and/or that it desired to appeal such decision. Therefore, the matter was considered closed on the basis of this provision of the labor-management agreement. Defendant further states that it went beyond the terms of this contract in an effort to be completely fair with Plaintiff and that the 'Chief Executive Officer of the Company' personally heard Plaintiff's appeal in several lengthy telephone conversations and after serious consideration affirmed the decision that dismissal was fair and even necessary." Defendant also denied that plaintiff's discharge was a violation of Rule 16, alleged that it was based on the more serious charge of assaulting a fellow employee with a deadly weapon, in violation of the laws of the city and state, and alleged that the last two sentences of the booklet state:

" * * * 'GENERAL—Violation of any Shop or Safety Rule subjects an employee to disciplinary action whether or not provided herein. When no penalty is provided, the action taken will be such as is warranted by circumstances.' "

On the same day on which defendant filed its answer it also filed its motion for summary judgment, supported by two affidavits. One was by Glenn R. Foelsch, defendant's Personnel Manager, and the other by Severin Merz, who supervised the administration of labor problems for defendant, particularly those involving Local Union No. 1055. The substance of the affidavits, so far as material here, is that after his suspension plaintiff admitted to Foelsch that he had pulled a knife on Troy Brewer, plaintiff's fellow employee and fellow union member; that the Union represented plaintiff, " * * * at all times mentioned in Plaintiff's Petition against St. Louis Car"; that at the hearing Brewer testified that plaintiff had assaulted him in the Tin Shop with a large open knife, accompanied by a menacing attitude and obscene, vicious words; that the Company Executive Shop Committee decided that plaintiff's suspension should be converted to dismissal; that the Union and its officers were advised of that decision; and that they did not appeal the decision.

Plaintiff did not file any affidavit in opposition to those filed by the defendant, but before defendant's motion for summary judgment was heard and submitted plaintiff filed his reply to defendant's answer. He denied therein that the Union had represented him at the hearing and alleged that he had represented himself, as he had a right to do " * * * under the Labor Management Relations Act of 1947 as amended, Section 9(a) * * *," from which he quoted; and that " * * * therefore any further action on the part of the employer defendant would have to be based on Article X of the Labor-Management

Agreement of June 1, 1960, Subject—Discharge Cases and the plaintiff denies that the employer defendant followed said Article X."

■ Plaintiff has incorporated in his brief copies of certain letters between the Union and plaintiff, and between plaintiff and the defendant. Since the correspondence was not before the court at the time it sustained defendant's motion for summary judgment, and is not properly a part of the record before us, we cannot, of course, give it any consideration. Cooper v. Finke, Mo., 376 S.W.2d 225, 228. Parenthetically, we add that the correspondence, if considered, would hurt rather than help plaintiff's position.

It is important to note that plaintiff did not deny that he assaulted or threatened his fellow employee with a knife. The cause of action attempted to be pleaded in his petition is not based on a denial of the charge which culminated in his dismissal, but on the grounds, first that under Rule 16 the extent of the penalty was limited to that of a warning, and that the discharge was therefore wrongful; and second, that the action of the defendant in discharging the plaintiff, " * * * without allowing him a chance to appeal his dismissal and in refusing to hear his appeal when made * * * " was wrongful and unjust. Plaintiff argues that both of these matters were genuine issues as to material facts which should have been tried, and that the court therefore erred in rendering summary judgment in favor of defendant.

■ Civil Rule 74.04(c), V.A.M.R., provides that when a motion for summary judgment is presented, " * * * Judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. * * * " Corresponding Federal Rule 56 has been interpreted to mean that not every factual

dispute bars summary judgment. Rather, the Federal courts have uniformly ruled that the dispute must involve a *material* fact, that is, one which has legal probative force as to a controlling issue. Thus in Durasteel Co. v. Great Lakes Steel Corp., C.A., 8th, 205 F.2d 438, 441, it was said:

> " * * * An issue of fact is not genuine unless it has legal probative force as to a controlling issue, 35 C.J.S., Federal Courts, § 144 p. 1205. The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment."

To the same effect see Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, Sec. 1234, p. 131; Robbins v. Gould, C.A. 5th, 278 F.2d 116; Leas v. Courtney Co., C.A.4th, 261 F.2d 13; Burton v. United States, D.C.Utah, 139 F.Supp. 121; Bank of China v. Wells Fargo Bank and Union Trust Co., D.C., N.D.Calif., 104 F.Supp. 59. The standard to be employed in determining the merits of plaintiff's appeal is not, therefore, whether under the pleadings and the affidavits there remained *any* factual dispute; rather, the test to be applied is whether the factual dispute, if one existed, was of such legal probative force as would control or determine the result of the litigation, and hence preclude the entry of summary judgment.

For the purpose of making that determination we will assume (what is not pleaded) that Rule 16 was a part of plaintiff's contract of employment; that the contract thereby limited the penalty which the defendant could impose for plaintiff's transgression to that of a warning (see Culver v. Kurn, 354 Mo. 1158, 193 S.W.2d 602, 166 A.L.R. 644); and that defendant therefore wrongfully discharged plaintiff. We

will further assume that plaintiff represented himself at the hearing before the Company Executive Shop Committee; that he had the right to do so under the Federal Law, 29 U.S.C.A. § 159(a); and that the notice of his discharge should have been sent to him instead of to the Union. Lastly, we will assume that upon learning of defendant's decision to discharge him plaintiff appealed therefrom, as he alleged; and that the Chief Executive Officer of defendant refused to discuss the matter with him (plaintiff did not directly allege that the Chief Executive Officer so refused, but we infer that is what he meant by his allegation that defendant's action, " * * in refusing to hear his appeal when made * * * was wrongful and unjust * *," for there is no provision for a "hearing" before the Chief Executive Officer). Assuming that all of the foregoing factual allegations were in dispute, we nevertheless are of the opinion that such issues were not determinative or controlling as to plaintiff's action. The material fact which determined and controlled the merits of plaintiff's suit, as shown by plaintiff's own pleadings and exhibits, was not in dispute. We refer to plaintiff's failure to exhaust the adequate remedy afforded him under the grievance procedure established by the collective bargaining agreement.

■ In Reed v. St. Louis Southwestern R. Co., Mo.App., 95 S.W.2d 887, 888–889, this court held:

"Appellant's first assignment of error is that the trial court erred in overruling its demurrer offered at the close of the case, in that though the contract of employment provided that 'should the accused be discharged or otherwise disciplined and consider such action unjust, his committee may, within thirty days, appeal in writing to the superintendent; should they be dissatisfied with the decision of the superintendent they may appeal in writing within thirty days to the vice president and general superintendent who will then grant a hearing, rendering decision within fifteen days,' neither the respondent, nor any one for him, took an appeal from the action of the assistant superintendent in ordering his discharge after the hearing. This assignment of error is based upon the rule that where a contract of employment provides, as in the instant case, that a discharged employee may seek redress by appealing to certain designated officers, boards, or tribunals, such an employee is required to pursue and exhaust his contract remedy and cannot properly complain to a court for redress until he has exhausted the remedies accorded him by his contract. The point is well taken."

The rule that a discharged employee must exhaust the administrative remedies provided for in his contract of employment before seeking redress in a court is in accord with the weight of authority. 72 A.L.R.2d 1439; Hamilton, Individual Rights Arising from Collective Labor Contracts, 3 Mo.L.Rev. 252, 266; 31 Am.Jur., Labor, Sec. 124, p. 485; Transcontinental and Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325; Mayfield v. Thompson, Mo.App., 262 S.W.2d 157; Jorgensen v. Pennsylvania R. R. Co., 25 N.J. 541, 138 A.2d 24, 72 A.L.R.2d 1415; Harrison v. Pullman Co., C.A.8th, 68 F.2d 826.

As stated, plaintiff attached and incorporated as part of his petition Exhibit A, the collective bargaining agreement. Article X of the Agreement, governing discharge cases, provides that if the decision of the Company Executive Shop Committee, after holding the hearing, is to discharge the employee, and such decision is unacceptable to him, the employee " * * may allege a grievance which shall be handled in accordance with Article V—Adjustment of Grievances, beginning with Par. 4 of said Grievance Procedure." Article V, Paragraph 4 provides that the appeal or grievance shall be " * * * passed for consideration to the representa-

tive of the National Organization of the Union and the Chief Executive Officer of the Company or their designated representatives. If no such notice is received by the Company within the time specified the matter shall be considered closed, but if the appeal is referred to the representatives, a memorandum of the settlement reached by them signed jointly by the officer of the Company and the representative of the National Organization shall be furnished to Local Union No. 1055." Since plaintiff was representing himself in the processing of his grievance over his alleged wrongful discharge, the matter was one for discussion between plaintiff and defendant's Chief Executive Officer. However, if, as plaintiff alleged in substance, the defendant's Chief Executive Officer refused to discuss his grievance with him, plaintiff had an adequate remedy which he was required to follow. Paragraph 6 of Article V reads:

"6. When grievances are not disposed of within the prescribed time, in any step, unless an extension of time has been mutually agreed upon, they may be appealed to the next step."

The next and last step provided for the adjustment of grievances is contained in Paragraph 5, which provides that, if within 10 days from the date of the receipt of the notice of grievance, the difference has not been satisfactorily settled between the representative of the national union (plaintiff, here) and the Chief Executive Officer, then:

"5. * * * the matter shall be appealed to an impartial Umpire to be appointed by mutual agreement of the parties hereto. In the event that the parties cannot agree upon the selection of an impartial Umpire within five (5) days (Saturdays, Sundays and Holidays excepted) it shall be under-

stood and agreed that the United States Conciliation and Mediation Service shall be requested to furnish a list of three qualified arbitrators from which the Union and the Company shall each have the right to eliminate one name. The remaining man shall be the impartial Umpire to hear said case or cases. The impartial Umpire shall hold said hearing as expeditiously as possible and his decision shall be final."

■ Plaintiff obviously recognized his obligation to pursue the remedy provided for in Articles X and V of the collective bargaining agreement, for he did appeal from the decision of the Company Executive Shop Committee to the Chief Executive Officer. But it is obvious from plaintiff's own pleadings that he made no effort to appeal his grievance to an impartial Umpire, as he was required to do by Article V, Paragraph 5 of the Agreement. Having failed to pursue and exhaust the remedy accorded him by the Agreement, he cannot properly complain to a court for redress. Reed v. St. Louis Southwestern R. Co., supra, and authorities cited.

It follows that the court did not err in entering summary judgment in favor of the defendant, and that the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

WOLFE, Acting P. J., ANDERSON, J., and L. F. COTTEY, Special Judge, concur.

RUDDY, P. J., not participating.