**A.J. RACKERS, INC., Respondent,**

**v.**

**Eddie L. PORTER, Appellant.**

**No. WD 37524.**

Missouri Court of Appeals, Western District.

Aug. 19, 1986.

John Landwehr, Jefferson City, for appellant.

C. Christy Barton, Jefferson City, for respondent.

Before NUGENT, P.J., and BERREY and GAITAN, JJ.

BERREY, Judge.

Appellant Eddie L. Porter, defendant below, appeals from a grant of summary judgement in favor of plaintiff/respondent A.J. Rackers, Inc.

The question presented is whether Rackers is entitled to recover in quantum meruit against Porter for installing a heat pump in Porter's new log home.

In reviewing a motion for summary judgment this court must examine the entire record in the light most favorable to the party against whom the summary judgment is entered. Rule 74.04(c); 81.06; *Smile v. Lawson*, 435 S.W.2d 325, 328 (Mo. banc 1968). In order for a summary judgment to stand a two-step analysis must be performed: (1) there must be no genuine issue of fact requiring a trial; and (2) the prevailing party was entitled to judgment as a matter of law. *Kaufman v. Bormaster*, 599 S.W.2d 35, 37 (Mo.App.1980). A genuine issue of material fact exists whenever there is any doubt as to said material fact. *Seliga Shoe Stores v. City of Maplewood*, 558 S.W.2d 328, 321 (Mo.App.1977). A material fact has legal probative force relevant to the controlling issue. *Ware v. St. Louis Car Co.*, 384 S.W.2d 287, 290 (Mo.App.1964).

In reviewing the facts presented under this record it is clear that Rackers was not entitled to a summary judgment, therefore, it is not necessary that this opinion decide the other prong of the summary judgment test.

On August 25, 1977, Mr. Porter entered into a contract with Mr. Yarbrough for the construction of a new log home. The contract price for the home was $36,500. The contract price included the installation of central air conditioning or a "heat pump." In addition, as part of the contract the parties agreed to the following schedule of draws against the construction loan:

⅓ upon completion of basement and
exterior walls . . . . . . . . . . . . . . . . . . . . . .$12,167
⅓ upon completion of roof
installation, installation of windows
and doors . . . . . . . . . . . . . . . . . . . . . . .$12,167
⅓ upon completion of house and
material list and description . . . . . . . .$12,167

In his affidavit Mr. Porter stated Mr. Yarbrough took his first draw for the specified amount on December 13, 1977, before the completion of the basement; he had agreed to release the funds after Mr. Yarbrough said he needed the money to build the concrete forms and purchase other materials. According to Mr. Porter, Mr. Yarbrough took a second draw in the amount of $12,500 on April 3, 1978, although the house was not yet under roof. Mr. Porter further attested "the bank and [he] agreed to the second draw to be used for roofing, purchase and installation of the heating and cooling system, plumbing and plumbing fixtures." In June 1978, Mr. Yarbrough left the job and did not finish the construction of the house. He took his last draw on June 9, 1978, making the total amount paid under the contract $29,850.

The parties dispute who actually contracted for the heat pump: George H. Haaf, vice-president of A.J. Rackers, stated in his affidavit that Mr. Porter purchased the heat pump directly. Mr. Porter and Mr. Yarbrough stated the heat pump was ordered on Yarbrough's open account. Likewise, the parties disagree when the work was actually performed. Porter attested the heat pump was delivered by the end of May 1978, before the general contractor, Yarbrough, left the construction site. Mr. Haaf, however, asserts the heat pump was delivered on or about June 21, 1978, a date following Yarbrough's departure and that the installation of the pump was completed on August 2, 1978; Mr. Porter received a bill from A.J. Rackers dated August 3, 1978, which is part of the record before us. Mr. Porter stated he turned this bill over to his attorney Robert L. Hyder.

The record reveals a letter dated February 29, 1979, written by Mr. Yarbrough. He stated he was sorry he had been unable to pay the amount of $8,876.37 on his open account, part of which included $3,300 for the Porter house and that the money had been turned over to Robert Hyder, Mr.

Porter's attorney. Subsequent to this writing, Mr. Yarbrough filed for bankruptcy on September 28, 1979; his petition for bankruptcy, shows a debt to A.J. Rackers, Inc., for $8,900 for furnances and heat pumps listed in his schedule of debts.

A.J. Rackers was never paid and filed suit against defendant Porter on December 11, 1980, in a three-count petition under the theories of (1) express contract; (2) account; and (3) unjust enrichment. Defendant moved for summary judgment on all three counts with supporting affidavits and exhibits. A.J. Rackers filed affidavits and supporting documentation in opposition to defendant's motion and then filed its own summary judgment motion on counts II and III. The court's judgment entry sustained "plaintiff's motion for summary judgment" without specifying the count as to which motion was sustained. The allegations of Count II include the averment that "at the request of defendant [1] plaintiff furnished" the heat pump system. Defendant Porter disputes that allegation, and the allegation is a material fact. We assume, therefore, that the trial court intended to enter summary judgment only as to Count III, which does not explicitly allege the agreement between Porter and plaintiff.

Even assuming the summary judgment was entered only as to Count III, the trial court, however, was still in error due to the existence of issues of fact. The record does not reveal when the system was actually delivered or installed which may have a bearing on a more material question: whether the system was installed by an agreement with the contractor or with the owner. Furthermore, statements made by Yarbrough indicate that portions of his last draw were returned to defendant's attorney to pay for the heat pump. Yet, Mr. Porter's affidavit contradicts the adherence to the draw schedule and asserts that through mutual agreement Mr. Yarbrough's second draw taken on April 3, 1978, was to be used for the purchase and installation of "the heating and cooling system." Thus, the record reveals the existence of material issues of fact and summary judgment is inappropriate in the instant case.

Judgment is reversed and remanded.

All concur.

---

1. Carolyn Porter, Eddie L. Porter's former wife was made a defendant to the original action.