JAMES COOPER, ET AL., AND NEWARK TYPOGRAPHICAL LOCAL No. 103, PLAINTIFFS-APPELLANTS, v. NUTLEY SUN PRINTING CO., INC., ET AL., DEFENDANTS-RESPONDENTS.

Argued October 23 and 24, 1961—Decided November 20, 1961.

Mr. *Thomas L. Parsonnet* argued the cause for the plaintiffs-appellants (*Messrs. Parsonnet, Weitzman & Oransky,* attorneys; *Mr. Victor J. Parsonnet,* on the brief).

Mr. *Richard Heller* argued the cause for the defendants-respondents (*Messrs. Heller & Laiks,* attorneys).

The opinion of the court was delivered by

PROCTOR, J.   The issues presented on this appeal involve the effect which our courts should give to the constitutional rights of employees in private employment to organize and select their representatives for the purpose of collective bargaining.

The complaint was filed in the Superior Court, Chancery Division.   It alleged that: On September 2, 1959, the nine individual plaintiffs were members of the plaintiff union (Local No. 103).   Defendants, employers of the individual plaintiffs, were engaged in the printing and publishing of a newspaper and other types of printing.   Between September 2, 1959 and September 28, 1959, defendants (a single employing unit for the purpose of this appeal) discharged the plaintiffs, Cooper, Ritter and Williams, because of their membership in Local No. 103.   During this period defendants ordered the six other individual plaintiffs "to have nothing

to do with plaintiff Local No. 103, and to refrain from becoming members therein," and "threatened plaintiff Lukas with bodily harm if he joined any Union strike against the defendants." It was also alleged that because of these acts the six individual plaintiffs declared a strike and together with Cooper, Ritter and Williams commenced picketing defendants' place of business; the strike still continues. The complaint further stated that prior to instituting the present action, the individual plaintiffs filed charges with the National Labor Relations Board alleging the defendants were guilty of unfair labor practices. The Board rejected jurisdiction over the matter because defendants were not sufficiently engaged in interstate commerce to justify the Board's intervention. Plaintiffs demanded judgment "ordering defendants to reinstate plaintiffs Cooper, Ritter, and Williams to their jobs with full back pay from the time of their discharge to the time of reinstatement and thereupon to re-employ the other individual plaintiffs at the jobs and wages enjoyed by them, and with the full seniority rights at the time of the commencement of the strike, upon their tender of return to employment." In their answer defendants denied the individual plaintiffs, Cooper, Ritter and Williams, were discharged because of their union activities. While defendants admitted the National Labor Relations Board had rejected jurisdiction, they contended that jurisdiction over the matter lay exclusively in the Federal courts or agencies. Defendants further contended the complaint failed to allege a cause of action upon which relief may be granted. The pretrial order embodied the above issues.

At the outset of the trial, plaintiffs contended their rights as set forth in the 1947 *New Jersey Constitution, Art.* I § 19, had been violated. That section provides:

"*Persons in private employment shall have the right to organize and bargain collectively.* Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." (Emphasis added)

They urged the "constitutional provision is self-implementing" and the courts have the duty to redress any infringement upon these rights. Therefore they sought what they considered to be the proper remedy, namely, the relief demanded in their complaint. The defendants contended that the discharges resulted solely from "reasons of economy." Since the parties agreed that an appeal would be taken regardless of the trial court's decision, they did not introduce evidence to resolve the factual dispute. Plaintiffs simply made an "offer of proof * * * which will tend to prove that some of the plaintiffs were discharged because they joined the Union, and that the others went on strike to support the right of the plaintiffs to join the Union and to bargain collectively." Thereupon the court replied:

> "On the basis of that offer, Mr. Parsonnet, I am of the opinion that I do not have jurisdiction to grant the relief which you seek and I will refuse to accept the proof. In the event that the Appellate Court decides that my determination is erroneous the matter would then come back here for proof on the facts."

Accordingly, a judgment was entered stating, "[T]he Court lacks jurisdiction to grant the relief demanded by the Plaintiffs" and ordered "Judgment for the Defendants." Plaintiffs appealed to the Appellate Division and we certified the appeal before argument there.

We cannot tell the basis upon which the trial court found it lacked "jurisdiction." By their pleadings the parties assume the defendants are engaged in interstate commerce. If the court meant that through the National Labor Relations Act (29 *U. S. C. A.* § 151 *et seq.*) Congress had given exclusive jurisdiction in interstate labor disputes to the National Labor Relations Board, it was in error. Congress has pre-empted the field, requiring that all labor disputes which involve interstate commerce be submitted to the National Labor Relations Board. See *Guss v. Utah Labor Relations Bd.*, 353 *U. S.* 1, 77 *S. Ct.* 598, 1 *L. Ed.* 2d 601 (1957); *San Diego Bldg. Trades Council v. Garmon,* 353

194

*U. S.* 26, 77 *S. Ct.* 607, 1 *L. Ed. 2d* 618 (1957). But in some circumstances the Board may reject jurisdiction. 29 *U. S. C. A.* § 164(c) (1959) provides:

"(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction * * *

(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State * * * from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

Thus it is clear that once the Board has declined to assert jurisdiction over a labor controversy because of its minimal impact on interstate commerce, state tribunals are free to exercise jurisdiction over the subject matter. See Michelman, "State Power to Govern Concerted Employee Activities," 74 *Harv. L. Rev.* 641, 646 (1961); Aaron, "The Labor-Management Reporting and Disclosure Act of 1959," 73 *Harv. L. Rev.* 1086, 1092 (1960). In the present case, the parties agree the individual plaintiffs submitted the dispute to the National Labor Relations Board and the Board declined to assert jurisdiction. After the complaint was filed, Local No. 103 petitioned the Board as to whether it would assert jurisdiction. The Board declined because of the slight impact of the defendants' operations on interstate commerce. *Nutley Sun Printing Co. Inc. et als. and Newark Typographical Union Local No. 103,* 128 *N. L. R. B.* 58 (1960).

In view of the Board's refusal to take jurisdiction and the quoted provisions of 29 *U. S. C. A.* § 164(c)(2), it is clear that the Chancery Division was not barred by federal pre-emption from assuming jurisdiction in the present case.

██ If the trial court was of the opinion that it lacked "jurisdiction" to resolve the controversy because it could not

grant the relief sought, it was also in error. In the absence of controlling legislation, the courts have traditionally been the proper forums for dealing with matters affecting labor relations. *Hughes v. Superior Court of State of California,* 339 *U. S.* 460, 467, 70 *S. Ct.* 718, 94 *L. Ed.* 985, 993 (1950); *Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No. 680,* 30 *N. J.* 173, 182 (1959). Our Superior Court is a court of "original * * * jurisdiction throughout the State in all causes," *N. J. Const.* 1947, *Art.* VI, § 3, *par.* 2. The present complaint, having to do with labor relations, is within the general jurisdiction so conferred. Whether the complaint fails to allege a cause of action upon which relief may be granted is immaterial to the question of the court's jurisdiction. *Petersen v. Falzarano,* 6 *N. J.* 447, 454 (1951). As was said by Justice Black, speaking for the court in *Bell v. Hood,* 327 *U. S.* 678, 683, 66 *S. Ct.* 773, 90 *L. Ed.* 939, 943 (1946):

"For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."

Thus, even if the trial court believed it could not grant the relief sought, it had jurisdiction to pass upon the merits of the case. The court probably was aware of that fact since it entered judgment for the defendants. Without jurisdiction, it was powerless to enter judgment for either party. See *Maguire v. Van Meter,* 121 *N. J. L.* 150 (*E. & A.* 1938). This leads to the conclusion that the court used "jurisdiction" improperly.

If the court believed that plaintiffs failed "to state a claim upon which relief can be granted" and therefore dismissed the action, it was also in error. Our Constitution recognizes that employees have "the right to organize

and bargain collectively." If plaintiffs' allegations are to be believed, and they must be at this posture of the case, the sole object of the discharges was to thwart through economic duress the employees' rights to freely choose their bargaining agents. Thus the employers' conduct worked to violate the rights of members of a class protected by the Constitution.

Defendants contend that the sole purpose of the constitutional provision is to prevent legislative or judicial action which would diminish the guaranteed rights and does not safeguard these rights from infringement by individuals. We agree that the Legislature or the judiciary cannot abridge these rights, but the constitutional provision reaches beyond governmental action. It also protects employees against the acts of individuals who would abridge these rights. *Independent Dairy Workens Union of Hightstown v. Milk Drivers and Dairy Employees Local No. 680,* 23 *N. J.* 85 (1956); *Quinn v. Buchanan,* 298 *S. W. 2d* 413 (*Mo. Sup. Ct.* 1957).

Defendants further contend that the court is powerless to safeguard these constitutional rights of employees without a statute regulating labor relations. Certainly the Legislature may enact legislation to facilitate the exercise of constitutional powers and enforce rights granted. Indeed such legislation in the labor relations area would not be unwelcome. However, just as the Legislature cannot abridge constitutional rights by its enactments, it cannot curtail them through its silence. *People v. Western Air Lines, Inc.,* 42 *Cal. 2d* 621, 268 *P. 2d* 723, 732 (*Sup. Ct.* 1954). The judicial obligation to protect the rights of individuals is as old as this country. Chief Justice Marshall said in *Marbury v. Madison,* 1 *Cranch* 137, 163, 2 *L. Ed.* 60, 69 (1803):

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection."

The right to organize and bargain collectively is included in the Rights and Privileges Article of our Constitution and should be accorded the same stature as other fundamental rights. The United States Supreme Court has stated that violations of rights recognized by the Bill of Rights Amendments to the *United States Constitution* are actionable. *Wiley v. Sinkler*, 179 *U. S.* 58, 21 *S. Ct.* 17, 45 *L. Ed.* 84 (1900); *Swafford v. Templeton*, 185 *U. S.* 487, 22 *S. Ct.* 783, 46 *L. Ed.* 1005 (1902); see *Bell v. Hood, supra;* see also *Lowe v. Manhattan Beach City School District of Los Angeles County,* 222 *F. 2d* 258 (9 *Cir.* 1955); *Quinn v. Buchanan, supra; Ferrell v. North Carolina State Highway Comm.,* 252 *N. C.* 830, 115 *S. E. 2d* 34 (*Sup. Ct.* 1960). Indeed, in *Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No. 680,* 23 *N. J.* 85 (1956) this court held that the rights of employees declared in *N. J. Const.* 1947, *Art.* I, § 19 were enforceable when individuals interfered with those rights. The court needed no implementing statute to enjoin the interfering conduct. It follows that the court in the present case needs no legislative implementation to afford an appropriate remedy to redress a violation of those rights. To find otherwise would be to say that our Constitution embodies rights in a vacuum, existing only on paper.

Assuming plaintiffs' allegations are true, defendants have sought to undermine the protection given persons in private employment by our fundamental law. This constitutional provision leaves an employer free to discharge an employee as he sees fit, for good reason or no reason at all, subject only to the limitation that he cannot exercise this right as a subterfuge for interfering with the right of employees freely to organize and bargain collectively. See *Stork Restaurant v. Boland,* 282 *N. Y.* 256, 26 *N. E. 2d* 247 (*Ct. App.* 1940). The defendants say that the court cannot "curb the right of an employer to discharge an employee at will." They rely upon *Jorgensen v. Pennsylvania R. R. Co.,*

25 *N. J.* 541 (1958) and *Schlenk v. Lehigh Valley R. R. Co.,* 1 *N. J.* 131 (1948). Those cases are not applicable as they involved discharges of employees for alleged misconduct and constitutional rights were not in issue.

Of course, we cannot now say whether constitutional rights have been in fact violated. As the facts underlying the discharges and the strike are in dispute, the trial court must first resolve that question. If the trial court finds the individual plaintiffs' constitutional rights have been infringed upon, it can exercise its vast equitable powers and grant the relief which the circumstances dictate. As was stated in *Westinghouse Electric Corp. v. United Electrical, Radio and Machine Workers of America, Local No. 410,* 139 *N. J. Eq.* 97, 108 (*E. & A.* 1946) :

"A wrong suffered without a remedy is a blot upon the sound administration of justice. In the dissenting words of Cardozo, C. J., in *Graf et al. v. Hope Building Corp.,* 254 *N. Y.* 1; 171 *N. E.* 884, 888, 70 *A. L. R.* 984, '\* \* \* Let the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path. *Griswold v. Hazard,* 141 *U. S.* 260, 284; 11 *S. Ct.* 972, 999; 35 *L. Ed.* 678.' *Cf. Fifth Avenue Bank* [*of New York*] *v. Compson,* 113 *N. J. Eq.* 152, 153; 166 *A.* 86. This is justice in action. This is giving meaning to the proper exercise of the jurisdiction of the Court of Chancery."

The broad extent of equity's power to remedy a wrong was aptly described by Justice Heher in *Sears, Roebuck & Co. v. Camp,* 124 *N. J. Eq.* 403, 411–412 (*E. & A.* 1938) :

"Equitable remedies 'are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application ; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.' *Pomeroy's Equity Jurisprudence sec.* 109.

A lack of precedent, or mere novelty in incident, is no obstacle to the award of equitable relief, if the case presented is referable to an established head of equity jurisprudence—either of primary right or of remedy merely."

The plaintiffs seek the specific relief of reinstatement with back pay for the discharged employees and reinstatement for the striking employees. They would have this court issue a mandate requiring the trial court to so order if it finds the facts to be as alleged by the plaintiffs. However, before this court or any court possessing equitable powers ordains a particular type of relief, it should have the full facts before it. This case has reached us with the barest of records. No evidence of any kind was introduced in the trial court. As we noted above, the court has the broadest equitable power to grant the appropriate relief. The court can and should mold the relief to fit the circumstances, but it can hardly do so without knowing just what the circumstances are. "Generalizations are treacherous in the application of large constitutional concepts." *Hughes v. Superior Court of State of California, supra,* 339 *U. S.,* at *p.* 469, 70 *S. Ct.,* at *p.* 723, 94 *L. Ed.,* at *p.* 994.

When all of the facts are developed and equitable principles and defenses are considered, it may well be that the relief sought by the plaintiffs will be appropriate under the circumstances. When the United States Supreme Court was concerned with a violation of employees' rights to organize and bargain collectively as granted by the Railway Labor Act of 1926, it said that reinstatement with back pay could be a proper remedy for unlawful discharges in contravention of those rights. *Texas and New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks,* 281 *U. S.* 548, 50 *S. Ct.* 427, 74 *L. Ed.* 1034 (1930). Reinstatement is the conventional correction for discriminatory discharges. *Phelps Dodge Corp. v. National Labor Relations Board,* 313 *U. S.* 177, 187, 61 *S. Ct.* 845, 85 *L. Ed.* 1271, 1279 (1941). In answering a contention that only a statute and an administrative agency can properly deal with labor-management relations, Chief Justice Weintraub, speaking for this court, in *Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No.* 680, 30 *N. J.* 173 (1959), said, at *p.* 182:

"It should not be assumed that it is beyond the capacity of the judiciary to remedy the wrongs which appellants claimed. For the discharge of employees in violation of their right under Article I, paragraph 19 of the Constitution, an action for damages may well lie, and as well a suit to reinstate with back pay and to forbid discharge because of union activity. * * * [Citing cases.] Such enforcement of the constitutional guaranty would give to employees the assurance they need to permit them to pursue their own self-interest. * * *"

The above principles apply to the present case. Reinstatement with back pay may well lie. Of course, this also means that reinstatement with partial back pay or reinstatement without back pay or no reinstatement at all may be the proper result in this case. After the facts have been fully developed, equity has the power to tailor the remedy to insure a just result. See *Crane v. Bielski,* 15 *N. J.* 342, 346 (1954).

If the circumstances show the discharges were illegal and relief is granted to those discharged, the court should pass to a consideration of the non-discharged strikers' claim for relief. The court must then determine whether the striking employees should have engaged in self-help when they did, or whether they should have first sought relief in an appropriate tribunal by way of reinstatement of the dischargees and restraint against further discharges in violation of the constitutional guaranty. Until the record is complete it is impossible to state what remedy, if any, would be appropriate. For that reason we shall refrain from expressing a view on the matter until all of the facts have been revealed and the trial court has made a finding thereon and a determination of the appropriate remedy, if application of a remedy is required.

Though the decisions of the National Labor Relations Board may be helpful to the court in reaching a just result, they are in no sense binding. See Aaron, "The Labor-Management Reporting and Disclosure Act of 1959," *supra,* at *p.* 1098. As stated above, the court should resolve labor relations problems by applying equitable principles.

Accordingly, we hold the trial court had jurisdiction over the controversy and the complaint stated a cause of action. The judgment of the Chancery Division is reversed, and the cause is remanded for further proceedings in accordance with this opinion. Costs to abide the event.

*For reversal and remandment*—Chief Justice WEINTRAUB, *and* Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.