John Clay SMITH, (Plaintiff) Respondent,

v.

ARTHUR C. BAUE FUNERAL HOME, a Corporation, and Arthur C. Baue and David Baue, an unincorporated copartnership, (Defendants) Appellants.

No. 49788.

Supreme Court of Missouri,

Division No. 1.

Sept. 9, 1963.

Robert V. Niedner, Niedner, Niedner & Moerschel, St. Charles, John R. Stockham, Stockham & Breckenridge, St. Louis, for appellants.

J. F. Souders, Gruenberg, Schobel & Souders, St. Louis, for respondent.

Henry Andrae, Jefferson City, Hendren & Andrae, Jefferson City, of counsel, for amicus curiae National Selected Morticians.

Edward D. Summers, Jefferson City, for amicus curiae Missouri Funeral Directors' and Embalmers' Ass'n., Inc.

HOLMAN, Judge.

Plaintiff, a discharged employee of the Arthur C. Baue Funeral Home, in this action sought to enjoin his former employers from refusing to reinstate him, and to require the payment of lost wages as well as actual and punitive damages. At a hearing held on May 4, 1962, before Judge James D. Clemens, plaintiff was denied a temporary injunction. Thereafter, Judge Clemens disqualified himself and Judge James F. Nangle was assigned to hear further proceedings in the case. The trial before Judge Nangle resulted in a final judgment permanently enjoining defendants Arthur C. Baue and David Baue from interfering with plaintiff's right to bargain collectively, from denying plaintiff continued employment by defendants, and requiring that defendants reinstate plaintiff as an employee and pay him all compensation which he would have received had he not been discharged. Defendants have duly appealed from said judgment. We have jurisdiction because the issues here presented involve a construction of certain constitutional provisions.

The appeal in a companion case in which the Baues sought to enjoin the union from picketing their funeral home in St. Charles was submitted at the same time as the case at bar. See Arthur C. Baue et al. v. Embalmers Federal Labor Union No. 21301 et al., No. 49,789.

Plaintiff, 24 years of age at trial time, was employed for an indefinite term as an embalmer by Arthur C. Baue Funeral Home, a Corporation, of St. Charles, Missouri, on January 3, 1961, at a salary of $75 per week and a rental allowance of $25 per month. In August 1961 his salary was increased to $90 per week. Also, plaintiff was reimbursed for telephone service and was given group life and hospital insurance by his employer. Plaintiff testified that he was advised by the Baues that if he desired to join a union they "couldn't use him," and that if anyone from the union approached him he should not talk with them; that they told him that the union contract would not permit either of them to embalm, and that he had told them he didn't think that was fair; that his relationship with the Baues was friendly and that they had urged him to study and learn to be a funeral director; that they had given him a suit of clothes on one occasion, and on several occasions had loaned him an automobile to go to his former home in Walnut Ridge, Arkansas.

Plaintiff testified further that he contacted a union representative about the first of April 1962, and on April 9 signed cards authorizing the union to represent him; that he met with Arthur and David Baue in their office on April 14 and they advised him that they had received a letter from an attorney representing the union, and asked him if the union had contacted him and he said "No"; that at that time they (the Baues) advised him that they wanted to form a partnership so he would become a part of management; that on April 16, they delivered partnership papers to him, but he advised them that he wanted to consult an attorney in Walnut Ridge, Arkansas, before signing the agreement; that they told him at that time that if he joined a union they would have to discharge him, and he told them he would not talk to a representative of the union if one came to see him; that on April 18 he was told by Arthur that he could go to Arkansas for the Easter week end and have the attorney examine the partnership papers; that they wanted him to submit a letter of resignation, dated April 7, which they could show to the union representatives when they met with them on April 20; that the letter of resignation would not affect the partnership or his pay; that "they asked me if the union had contacted me, and I said 'No' "; that he went to Arkansas but did not have the attorney examine the partnership papers because he knew before leaving that he wasn't interested in a partnership; that after returning from Arkansas he saw the Baues on Monday afternoon when he reported for work; that David asked him to come in the office and he was then asked if he had contacted the union and he said "Yes"; that David

stated that he was disappointed in him, and handed him a letter of discharge which stated that his employment was terminated because of plaintiff's failure to send them the letter of resignation. Plaintiff stated that since his discharge he has attempted to obtain employment elsewhere as an embalmer but has been unable to do so; that he did receive $25 per day from the union for walking the picket line during the first three weeks following his discharge, and $20 per day for the second three weeks.

David Van Fossan testified that he was a practicing embalmer and was president of the Embalmers Federal Labor Union, Local No. 21301; that it was the policy of the union to try to organize funeral establishments which bury more than 85 people per year; that plaintiff called him on April 7, 1962, and expressed the desire that the union become his sole agent for collective bargaining; that he later sent plaintiff papers to sign, which he signed and returned to him; that he then had an attorney for the union write the Baues and advise that they would call on them on April 20 and discuss a union contract; that plaintiff called him on April 16 and advised him of the proposed partnership agreement and he advised plaintiff that if he became a partner he could not belong to the union; that he and other union representatives called on the Baues on April 20 and discussed the contract and, at the request of Arthur Baue, another meeting was arranged for April 25; that on April 23 he was notified that plaintiff had been discharged; that after sending a letter of protest to the Baues the union set up a picket line at the funeral home. He testified further that the proposed contract contained a provision under which neither Arthur nor David Baue could embalm bodies unless they joined the union, and so long as they had any ownership in the business they could not join the union; that the provision prohibiting management representatives from embalming had to be in all contracts and was not subject to negotiation.

David C. Baue testified that he was a mortician and a partner with his father in the operation of the Baue Funeral Home in St. Charles; that the partnership had been formed on March 28, effective April 1, 1962, and it leased the funeral home from the corporation; that plaintiff had told him that he knew nothing about the letter they (the Baues) received from the union, no representative of the union had contacted him, and that he had signed nothing and would not talk to a union representative if one called on him; that he had explained to plaintiff what a union contract would do to their business; that plaintiff was discharged for failure to send the requested letter of resignation as stated in the letter of discharge, and also for being dishonest in failing to be candid and frank with them concerning the fact that he had authorized the union to bargain for him. He further stated that if they entered into a union contract they would have to employ another employee; that plaintiff's salary would be increased from $90 a week to $170 a week; that they would have to discontinue their ambulance service which is a good public relations service for funeral homes; that they would have to discontinue some charitable services which are furnished at less than cost; that because of these additional expenses they would have to increase the price of their funerals which would cause them to be more than those of their two competitors in St. Charles, neither of whom have more than 85 funerals a year.

The testimony of Arthur C. Baue, upon the essential facts here involved, was very similar to that of David Baue and for that reason will not be detailed herein. He did state additionally that he began the operation of the business in 1935, and since that time had been either the owner or part owner thereof; that he is a licensed embalmer, as is his son David.

The allegations of plaintiff's petition with which we are here concerned are in paragraphs 7 and 8, wherein it is alleged that on April 23, 1962, defendants "7. * *

discharged plaintiff effective April 20, 1962, because of his membership in said labor organization and because plaintiff had designated the said labor organization as the sole and exclusive representative for the purposes of collective bargaining with respect to wages, hours, and other conditions and terms of plaintiff's employment. 8. The action of the defendants in dismissing plaintiff from its [their] employ is violative of the rights and guarantees contained in Article I, Section 29 of the Constitution of the State of Missouri that employees shall have the right to organize and to bargain collectively through representatives of their own choosing." It is conceded that plaintiff had not actually joined the union. However, as heretofore stated, he did sign a paper designating the union as his "sole and exclusive representative for purposes of collective bargaining, to negotiate and execute an agreement on my behalf with my said employer covering my wages, hours and all other conditions of employment." For the purposes of this opinion we will assume that he was discharged for the reason (at least in part) that he had signed the aforementioned paper authorizing the union to represent him in bargaining with his employers.

The question presented, therefore, is whether plaintiff's discharge because of said union authorization would warrant an equitable judgment against his employers such as was entered by the trial court herein. We have concluded, primarily upon the authority of the case of Quinn v. Buchanan, Mo.Sup., 298 S.W.2d 413, that plaintiff was not entitled to the relief granted by the trial court in this cause.

■ The petition does not allege, and the evidence does not disclose, any contract between plaintiff and defendants relating to the tenure of plaintiff's employment. "The rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such case, no action can be maintained for wrongful discharge. Culver v. Kurn, 354 Mo. 1158, 193 S.W.2d 602, 166 A.L.R. 644; Forsyth v. Board of Trustees of Park College, 240 Mo.App. 622, 212 S.W.2d 82; Bell v. Faulkner, Mo.App., 75 S.W.2d 612; Odell v. Humble Oil & Refining Co., 10 Cir., 201 F.2d 123." Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 124. Plaintiff concedes that the quoted rule is established in this state but contends that it has no application if the discharge is accomplished under circumstances that would constitute a violation of Section 29, Article I, Constitution of Missouri, 1945, V.A.M.S., which provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

The relief granted plaintiff in this case was primarily the same as the "mandatory relief" sought by the discharged employees in the Quinn case, i. e., reinstatement, and "to award them such pay and allowances as they would have earned had they not been unlawfully discharged." 298 S.W.2d 416. In Quinn, the trial court sustained a motion to dismiss the petition. This court reversed and remanded the cause, holding that "plaintiffs in this class action are entitled to preventive relief enjoining defendant from coercing his employees into withdrawing from the union and rescinding their authorization to it to act as their collective bargaining representative and also from otherwise interfering by coercion with these employees' rights to freely choose the union as their collective bargaining representative. * * * However, plaintiffs are not entitled to the *mandatory relief sought* (emphasis ours) or to require defendant to recognize and bargain with the union. The relief to which they are entitled is to have the rights of those employees, who voluntarily choose to organize with them for the purpose of collective bargaining, protected from coercion." 298 S.W.2d 418, 419.

In discussing the meaning of Section 29, Article I, supra, in Quinn, we stated:

"This is a provision of the Bill of Rights by which the people assert their rights, acknowledge their duties and proclaim the principles upon which their government is founded. (See preamble to Art. I.) Provisions of a Bill of Rights are primarily limitations on government, declaring rights that exist without any governmental grant, that may not be taken away by government and that government has the duty to protect. 1 Cooley's Constitutional Limitations 93, 358; Am.Jur. 1092, Sec. 308; 16 C.J.S. Constitutional Law § 199, p. 976. As these authorities show, any governmental action in violation of these declared rights is void so that provisions of the Bill of Rights are self-executing to this extent. See also 1 Cooley's Constitutional Limitations 166 note. They do not, however, usually provide methods or remedies for their enforcement and certainly it is proper and within the legislative power to enact laws to protect and enforce the provisions of the Bill of Rights. 11 Am.Jur. 1094, Sec. 309. In the absence of legislation, individuals may enforce and protect these rights from infringement by other individuals by any appropriate common law or code remedy. * * *

"It should also be pointed out that Sec. 29, Art. I is not a labor relations act, specifying rights, duties, practices and obligations of employers and labor organizations, as plaintiffs seem to claim. See cases under similar New York constitutional provision: Erie County Water Authority v. Kramer, 208 Misc. 292, 143 N.Y.S.2d 379; Quill v. Eisenhower [5 Misc.2d 431], 113 N.Y.S.2d 887, 889; Trustees of Columbia University v. Herzog, 269 App.Div. 24, 53 N.Y.S.2d 617, affirmed 295 N.Y. 605, 64 N.E.2d 351, and Domanick v. Triboro Coach Corp., Sup., 18 N.Y.S.2d 650. This provision is a declaration of a fundamental right of individuals. It is self-executing to the extent that all provisions of the Bill of Rights are self-executing, namely: Any governmental action in violation of the declared right is void. As between individuals, because it declares a right the violation of which surely is a legal wrong, there is available every appropriate remedy to redress or prevent violation of this right. However, the constitutional provision provides for no required affirmative duties concerning this right and these remedies can only apply to their violation. As stated in the Quill case, 113 N.Y.S.2d loc. cit. 889: 'It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own choosing does not cast upon all employers a correlative obligation. The constitutional provision was shaped as a shield; the union seeks to use it as a sword. * * * The constitutional provision was intended to protect employees against legislation or acts which would prevent or interfere with their organization and choice of representatives for the purpose of bargaining collectively.' Thus implementation of the right to require any affirmative duties of an employer concerning it is a matter for the legislature." 298 S.W.2d 417, 418, 419.

As shown by the foregoing, Quinn held that the constitutional provision here under consideration would not authorize relief in the nature of reinstatement and recovery of lost wages upon a showing of discharge because of membership in a union or other union activity. We therefore rule, as heretofore indicated, that the judgment herein ordering reinstatement and recovery of lost wages was not authorized by said constitutional provision.

Plaintiff has cited Cooper v. Nutley Sun Printing Co., Inc., 36 N.J. 189, 175 A.2d 639, and certain other New Jersey cases which hold that the courts may grant relief such as plaintiff obtained herein under a constitutional provision similar to Section 29, Article I, supra, even though there had been no implementing legislation enacted. We assume those cases are cited in the hope that the reasoning therein would convince us that Quinn is unsound and should be

**254**

overruled. We have accordingly made a careful review of the Quinn opinion in the light of the reasoning in the New Jersey cases and have concluded that the Quinn case is sound and should be followed in the case at bar.

■ It should also be noted that the court in its judgment granted an injunction against defendants Arthur C. and David Baue restraining them from coercing or otherwise interfering with the rights of their employees to organize, etc. This relief was not specifically prayed for in plaintiff's petition but was apparently granted by the court under the prayer for general relief. The Quinn case held that that type of relief is authorized in a case of this nature. However, since plaintiff is the only employee (or former employee) of defendants who is concerned with this controversy, and since he has been discharged and is not entitled to reinstatement, there is no basis for affirming that portion of the judgment.

■ As indicated, we rule that plaintiff is not entitled to any equitable relief in this action. However, it is well established that in furtherance of justice a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had. (There are certain restrictions on that rule but none are applicable here.) We have concluded, for the following reasons, that the cause should be remanded for a retrial of the issue of plaintiff's pleaded claim for damages for wrongful discharge.

■ As heretofore stated, since plaintiff had no contract of employment for any definite term, his employers' right to terminate his employment at any time for any reason was well established by our decisions. However, this right was modified by the adoption of Section 29, Article I, supra, to this extent, namely, an employer may not discharge an employee for asserting the constitutional right thereby given him to choose collective bargaining representatives to bargain for him concerning his employ-

ment. This is true because, as we said of this provision in Quinn, "As between individuals, because it declares a right the violation of which surely is a legal wrong, there is available every appropriate remedy to redress or prevent violation of this right." 298 S.W.2d 419. Thus, plaintiff's discharge, if it was for that reason (and plaintiff had substantial evidence to show that it was), was a wrongful discharge for which he could maintain an action for damages. We have heretofore assumed, for the purposes of this opinion, that plaintiff was discharged because of the union authorization. We see no occasion for this court to make a finding as to that issue. Since the claim for damages is at law, the jury (unless waived) should determine that issue and the amount of damages, if any, plaintiff is entitled to recover.

The judgment is reversed and the cause remanded for a limited new trial in accordance with the views herein expressed.

All concur.