**Loyd F. HOWE, Plaintiff-Appellant,**

**v.**

**ST. LOUIS UNION TRUST COMPANY, a Corporation, Kenneth H. Eggers, Milton R. Wismar, Centrifugal & Mechanical Industries, Inc., a Corporation, Elmer O. Binder, James E. Bilderback, Parker W. Bigley, John McDermott, Wade R. Coon, Wilfred Widdows, and A. Lowell Morriss, Defendants-Respondents.**

No. 50935.

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

Opinion Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court En Banc Denied Aug. 3, 1965.

Eugene V. Krell, St. Louis, for appellant.

R. H. McRoberts, Jr., St. Louis, Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel, for respondents St. Louis Union Trust Co., Kenneth H. Eggers and Milton R. Wismar.

Jerome F. Duggan, Sidney W. Horwitz, Dubinsky & Duggan, St. Louis, for respondents Centrifugal & Mechanical Industries, Inc., Elmer O. Binder, James E. Bilderback, Parker W. Bigley, John McDermott, Wade R. Coon, Wilfred Widdows and A. Lowell Morris.

HYDE, Presiding Judge.

Action in four counts for actual and punitive damages of $78,800.00, for wrongful discharge from employment and failure to furnish a service letter in compliance with Sec. 290.140 RSMo 1959, V.A.M.S. The Court directed a verdict for defendants on all counts at the close of plaintiff's evidence and plaintiff has appealed from the judgment entered.

The individuals sued and their connection with the corporate defendants was as follows: Defendant Kenneth Eggers was Vice President, and Milton R. Wismar, Trust Officer of defendant St. Louis Union Trust Company, hereinafter called Trust Company. The other defendants were officers and employees of defendant Centrifugal & Mechanical Industries, Inc., hereinafter called Centrifugal: Elmer O. Binder, President; James E. Bilderback, Vice President; Parker W. Bigley, Executive Vice President; John McDermott, Purchasing Agent; Wade R. Coon, Engineer; Wilfred Widdows, Plant Superintendent. A. Lowell Morriss, lawyer for Centrifugal, was co-executor of the estate of Andrew F. Howe, deceased, along with Trust Company.

Count I of plaintiff's petition alleged that the individual defendants, Binder, Bilderback, Bigley, McDermott, Eggers, Wismar and Morriss, individually and collectively, maliciously and wilfully and with intent to prevent plaintiff from having employment with Centrifugal, induced Centrifugal to discharge plaintiff from his employment, thereby interfering with his contractual relations, to plaintiff's damage. Though named in Count I, the prayer did not ask for a judgment against Centrifugal. Plaintiff sought $18,800.00 actual damages for loss of wages and $40,000.00 punitive damages.

Count II alleged that defendants, Centrifugal, Binder, Bilderback, Bigley, McDermott, Widdows, Coon, Trust Company, Eggers, Wismar and Morriss, maliciously and wilfully conspired to and did cause a severance of plaintiff's employment with Centrifugal, thereby interfering with plaintiff's potential advantage of employment during the administration of the probate estate of Andrew Francis Howe, and his participation in and knowledge of the operation of the corporation. Plaintiff sought judgment against the aforementioned defendants for $38,800.00 actual damages, which included the $18,800.00 for loss of wages sued for in Count I and $40,000.00 punitive damages.

Count III charged that defendants, Binder, Bilderback, Bigley, McDermott, Coon, Widdows and Morriss communicated injurious and false statements concerning plaintiff to the Trust Company, Eggers, Wismar and Centrifugal, causing plaintiff to lose his employment. Plaintiff sought actual damages against the individual defendants, exclusive of Eggers and Wismar, for said alleged injurious falsehood in the amount of $18,800.00.

Count IV alleged that Centrifugal and Binder, in the issuance of Centrifugal's service letter to plaintiff on his demand, failed to comply with the Missouri statute relative to same, and failed to state the true cause of plaintiff's discharge. Plaintiff claimed actual damages in the amount of $18,800.00 and punitive damages of $40,-000.00.

Plaintiff's evidence consisted of his own testimony and portions of depositions of defendants offered as admissions. Plaintiff's father, who died February 7, 1961, owned 43,181 shares of the 43,200 outstanding shares of the common stock of Centrifugal. (Plaintiff's testimony showed that at the time of the trial these shares were not in his father's estate, having been sold apparently during administration although still in the estate at the time of his discharge.) Plaintiff, who was 68 years of age at the time of the trial, was employed by his father as a wood pattern maker on August 10, 1959 and was paid $3.60 per hour. Prior to that time, plaintiff had been a wood pattern maker for the Caterpillar Tractor Company at Peoria, Illinois. Plaintiff said he had worked as a pattern maker for over fifty years. Plaintiff was discharged on May 19, 1961. After that time, patterns for Centrifugal were purchased from pattern manufacturers.

It appears from the depositions in evidence that after the death of plaintiff's father, plaintiff wanted to take part in management of the company, and complained he was not being informed about "what was going on." It was the view of the officers of Centrifugal that plaintiff "did not have management ability." The executive committee of Centrifugal, consisting of the President and the two Vice Presidents, discussed the matter of plaintiff's discharge at least twenty times because he was interfering with the employees, butting into directors' meetings and making himself a general nuisance. The matter was brought to a conclusion when plaintiff during his vacation wanted to go to a trade show at Cleveland, Ohio, where Centrifugal had a booth. It appears that plaintiff's expressed purpose was "to protect his interests," saying "he intended to go into the booth and report to the trade that he was one of the heirs of Mr. Howe's Estate and would at one time be operating the company." The officers did not want him to go, considering that plaintiff was not familiar with the company's work and not being a salesman he might damage its association with some of its prospects. Plaintiff did not go but was discharged soon afterwards. Other material facts will be stated in connection with our rulings.

■ Counts I, II and III are all for damages for wrongful discharge. Plaintiff suggests, as one theory of liability, interference with contractual relations, citing Prosser on Torts, 3rd Ed., 955 et seq., Chapter 26. However, this discussion mainly concerns inducing a person to break an existing contract of employment under the principles established by the leading case of Lumley v. Gye, 2 El. & Bl. 216, 118 Eng. Rep. 749. See also Downey v. United Weatherproofing, Inc., 363 Mo. 852, 253 S.W.2d 976. The trouble with plaintiff's case is that he had no definite contractual relations with Centrifugal; he neither alleged nor had any evidence of any employment contract for continuing service. It appears only that he was employed on an hourly wage basis. " 'The rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason and, in such case, no action can be maintained for wrongful discharge. Culver v. Kurn, 354 Mo. 1158, 193 S.W.2d 602, 166 A.L.R. 644; Forsyth v. Board of Trustees of Park College, 240 Mo.App. 622, 212 S.W.2d 82; Bell v. Faulkner, Mo.App., 75 S.W.2d 612; Odell v. Humble Oil & Refining Co., 10 Cir., 201 F.2d 123.' Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 124." Smith v. Arthur C. Baue Funeral Home, Mo.Sup., 370 S.W.2d 249, 252. See also Morsinkhoff

v. DeLuxe Laundry & Dry Cleaning Co., Mo.App., 344 S.W.2d 639; Maddock v. Lewis, Mo.Sup., 386 S.W.2d 406, 411. Plaintiff says Count III is based on injurious falsehood communicated by the named officers and employees of Centrifugal to the executor of his father's estate, the Trust Company and its officers, but the relief sought is damages for wrongful discharge. This could not state a cause of action, if his discharge was not wrongful because, having no contract for employment, plaintiff could have been discharged "at any time, without cause or reason or for any reason." Furthermore, Trust Company was not his employer.

■ Although plaintiff says there was ample evidence to indicate that the defendants conspired to effect plaintiff's discharge, he also says that "individually and collectively" defendants "committed malicious, wilful acts to his damage." Acts he points out are that the executive committee discussed the matter of his discharge any time they were together, being at least 20 times; that President Binder at all times recommended discharge; that the Trust Company and its officers intended that plaintiff stay in the employ of Centrifugal but that the other defendants persuaded them he should be discharged; and that in answer to an interrogatory as to how defendants knew plaintiff was "incompetent, interfering, unnecessary employee and undesirable as an employee" (admitted in their answer as made to Trust Company) they said "by constant daily observation of plaintiff's action as an employee." Plaintiff states that such constant observation is at least an unlawful means to accomplish a lawful act, citing the definition of conspiracy in Royster v. Baker, Mo.Sup., 365 S.W.2d 496, 499. Our view of the evidence is that plaintiff's discharge was a lawful act for the reasons hereinabove stated and that upon consideration of the whole record we must find no unlawful means was shown. The law of civil conspiracy is well stated in the Royster case; see also Gruenewaelder v. Wintermann, Mo.Sup., 360 S.W.2d 678, 687.

An instructive case on the situation here is Darrow v. Briggs, 261 Mo. 244, 169 S.W. 118, in which an action for wrongful discharge, claiming conspiracy, was brought by a college teacher whose employment was indeterminate. We held that the college violated no contract when it dismissed the teacher and therefore no cause of action was stated against it. We further held, as to the conspiracy claim against the individual defendants, that "the allegation[s] that they conspired together do not authorize the plaintiff to maintain his action when he could not maintain it against one defendant, if sued alone. * * * [A] conspiracy of itself furnishes no cause of action, because from the mere forming of it no possible damages can accrue." See also Maddock v. Lewis, Mo.Sup., 386 S.W.2d 406, 412. We consider these principles to be applicable to the facts of this case.

Plaintiff further claims error and asks for remand because of the court's ruling as to the applicability of Sec. 491.010 RSMo 1959, V.A.M.S. Plaintiff testified that in August 1959, he left his employment as a wood pattern maker for the Caterpillar Tractor Company in Peoria, Illinois to go to work with Centrifugal. The transcript then shows the following:

"Q And did you move to St. Louis at that time?

"A I did.

"Q Was that at the request of your father?

"MR. DUGGAN: I object for the reason that the prior testimony shows that the father is dead.

"THE COURT: Under the Dead Man's Statute, you mean?

"MR. DUGGAN: Yes, your Honor.

"THE COURT: Objection will be sustained. Any contract, conversation or anything else relied upon between this party and the deceased part[y] are not admissible because one of them is dead.

"MR. KRELL: May it please the Court, Andrew Howe is not a party to this suit.

"THE COURT: I didn't say he was a party. His estate is represented here by the St. Louis Union Trust Company and I said any conversation or agreements between the plaintiff and Mr. Howe who is dead, under which he purports to claim under his father, is not admissible under the Dead Man's Statute."

 There was no further offer or statement on the subject. Plaintiff made no offer of proof and at that time did not claim any waiver of the statute, as he does now in his brief by saying his deposition had been taken. Thus plaintiff has not preserved anything for appellate review as to this ruling. See Pitha v. St. Louis Public Service Co., Mo.Sup., 273 S.W.2d 176, 179, and cases cited; Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S.W.2d 835, 841; Tomlinson v. Ellison, 104 Mo. 105, 114, 16 S.W. 201, 203; Norton v. Lynds, Mo.App., 24 S.W.2d 183, 186. Plaintiff's claim, according to his counsel's argument, seems to have been that there were statements of officers of Centrifugal that he was to be retained as an employee until his father's estate was closed. Although that may have been intended, there was no evidence of a contract for any period. Even in his brief, plaintiff does not say he had any evidence of a contract. We, therefore, find no prejudicial error in the court's ruling and hold that the court properly directed a verdict on Counts I, II and III.

As to Count IV, plaintiff's claim is that he had substantial evidence to show the service letter furnished him did not state the true cause of his discharge and that he was entitled to a jury determination of that issue. Sec. 290.140 RSMo 1959, V.A.M.S., requires a letter "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service."

The service letter signed by defendant Binder as President of Centrifugal was as follows: "You were employed by Centrifugal and Mechanical Industries, Inc. in the capacity of a pattern maker, making new patterns and repairing old ones. Your period of employment was from August 10, 1959 to May 19, 1961. The reason for discontinuing your employment was because of lack of work, which you well know, and for the reason that your services as a Pattern Maker were no longer required."

 Plaintiff's petition did not state what he claimed to be the true reason for his discharge. See Stebbins v. Mart Drug Co., Mo.App., 344 S.W.2d 302, 304. However, defendants did not raise any question as to the sufficiency of the petition. The principal reason suggested in plaintiff's brief is because of his expressed intention to go to the trade show at Cleveland while he was on vacation. His discharge was immediately after the controversy over that but, as noted, in their answer to Count III the individual defendants, who were officers and employees of Centrifugal, admitted they communicated to the Trust Company and Centrifugal "that plaintiff was incompetent, interfering, an unnecessary employee, and undesirable as an employee," as alleged by plaintiff. In answer to another interrogatory as to reasons for not being satisfied with plaintiff's services, it was stated: "We could not use a pattern maker any longer nor could we use Loyd F. Howe in any other capacity." Both these answers were put in evidence by plaintiff. Plaintiff cites Gerharter v. Mitchellhill Seed Co., Mo. App., 157 S.W.2d 577, 580, but in that case the defendant did not claim that a good service letter had been furnished; and obviously the letter involved in that case did not comply with Sec. 290.140 because it failed to state "the nature and character of service rendered," which is not true in this case. In the Gerharter case, as here, there was no proof of actual damages but the court found the evidence sufficient to authorize submission of the issue of punitive damages, because of accusations of dis-

honesty. There were no such accusations in this case but "a discharged employee is entitled to recover nominal actual damages as a result of a violation of the statute." Cook v. Mid-Continent Petroleum Corp., Mo.App., 193 S.W.2d 66, 69.

Plaintiff suggests that defendants' statement about "constant daily observation" of him means "looking for an excuse to effect plaintiff's discharge one way or another." However, as we have held, defendants had the right to discharge plaintiff without any excuse and the real issue on Count IV is whether there was compliance with Sec. 290.140 in stating "for what cause" plaintiff "quit such service." Roberts v. Emerson Electric Mfg. Co., Mo.Sup., 338 S.W. 2d 62. In this connection, plaintiff cites Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980, where the reason given was: "[Y]ou failed to perform your duties in a satisfactory manner." In that case, plaintiff actually was discharged on a charge of dishonesty, which she had evidence to prove was false, but that was not the reason stated in the service letter. The court held there was substantial evidence to show that the true cause of the dismissal was that the company manager disliked plaintiff and had replaced temporarily the manager of the restaurant where she was employed for the specific purpose of "getting rid" of plaintiff. Plaintiff's evidence showed that this was done by "trumping-up charges which, if true, would justify her dismissal," because based on a claim of dishonesty, and it was held this authorized punitive damages. Plaintiff also cites Williams v. Kansas City Transit, Inc., Mo. Sup., 339 S.W.2d 792, 796, in which there was a directed verdict for defendant at the close of the plaintiff's case, affirmed by this court. Plaintiff therein claimed the reason given in his service letter (belief concerning misappropriation based on investigation) was false and also sued for libel. The Williams case holds a requested service letter is a qualifiedly privileged communication; and states: "[I]f a discharged employee demands a service letter, then 'truth must out', and the employee can accept the consequences."

■ Our view of the evidence is that it presents a question of whether plaintiff was discharged because Centrifugal decided to discontinue pattern making or whether pattern making was discontinued because Centrifugal decided to discharge plaintiff. There was evidence to support a finding that Centrifugal did decide to discontinue pattern making because plaintiff was not satisfied to do that work; and it does not appear that there was anyone else available to do it. There was also evidence to support a finding that the real reason for plaintiff's discharge was that the officers of Centrifugal considered him "incompetent, interfering, an unnecessary employee and undesirable as an employee," for any purpose. President Binder said plaintiff "didn't want to do the work" of a pattern maker but wanted to be his assistant; that he told plaintiff he would either have to do the work of a pattern maker or he would have to discharge him. Binder said, "My recommendation at all times was to discharge." Vice President Bilderback said: "Our reason for recommending his discharge was you couldn't reason with him." He also said the matter of discharging plaintiff was discussed at every directors' meeting and that plaintiff "made himself a general nuisance." Vice President Bigley said: "I do not think the quality of Mr. Howe's work entered into it in any way in his discharge. * * * [T]he chief problem, you might say, was insubordination and lack of, wholeheartedly lack of cooperation to give us time to iron this thing out to help him." Our decisions hold "that in a civil action for damages against the corporation under the remedial part of the statute (for which damages the defaulting corporation agent is not liable), the corporation is liable for having failed 'to arm the employé with a letter stating the true cause of his discharge,' Cheek v. Prudential Ins. Co., supra [Mo.], 192 S.W. [387] 391 [L.R.A.1918A, 166]." Roberts v. Emerson Electric Mfg. Co., Mo.Sup., 338 S.W.2d 62,

72; see also 31 Am.Jur. 950, Labor, Sec. 758; 57 A.L.R. 1073, annotation. Therefore, we hold plaintiff made a submissible case on Count IV.

The judgment is affirmed as to Counts I, II and III. As to Count IV the judgment in favor of defendant Elmer O. Binder is affirmed but reversed and remanded for retrial on Count IV against defendant Centrifugal and Mechanical Industries, Inc.

All concur.